UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **TANYA RUTNER HARTMAN** | Case No. 2:20-cv-1952 |
| **GILDED SOCIAL, LLC** | Judge |
| **Plaintiffs,** | Magistrate |
| -vs- | **VERIFIED COMPLAINT for DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |
| **AMY ACTON,** *In her official capacity as Director of the Ohio Department of Health* | Exhibit 1: *Amended Director's Stay at Home Order* |
| **Defendant.** | Exhibit 2: *Government Correspondence Denying Hearing(s) to Plaintiffs* |
| | Exhibit 3: *Sample "Dispute Resolution" Determination.* |
| | Exhibit 4: *Verifying Declaration of Plaintiff Tanya R. Hartman* |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Now comes Plaintiffs, TANYA RUTNER HARTMAN and GILDED SOCIAL, LLC, who, in support of their Complaint for Declaratory Judgment and Injunctive relief states as follows:

**INTRODUCTION**

1. This is an action for declaratory judgment, preliminary and permanent injunction, and damages pursuant to 42 U.S.C. §1983, arising from Defendant's unconstitutional official conduct, policies, practices, regulations, restrictions, threats, intimidation, and/or harassment.

2. While the Ohio Department of Health and its Director may maintain latitude to regulate so as to ameliorate the effects of a pandemic, that latitude remains subject to constitutional limits.

1

3. The Department and its Director claims the authority to criminalize "non-essential business" as defined, if defined at all, solely by the Department and the Director.

4. The Director's Orders summarily criminalize all business not listed by the Director as "essential," without providing any process, venue, or judicial review to determine whether these Ohioans' businesses are in fact "essential" and safe enough to warrant operation.

5. However, Plaintiffs' remain entitled to Due Process, and the State's Orders violate that right by not providing an immediate hearing wherein the State must justify its conclusions regarding the businesses of Plaintiffs and others.

6. The foregoing procedural defect contaminates the entirety of the Director's criminalization of "non-essential business," rendering that criminalization constitutionally impermissible.

7. As a direct result of the Director's unconstitutional practices, Plaintiffs and many others now face an imminent risk of criminal prosecution and extensive daily fines, or in the alternative, decimation of their businesses, livelihoods, and economic security, as well as continued irreparable harm to their rights under the Fifth and Fourteenth Amendment to the United States Constitution.

8. This harm may only be remedied by a ruling from this Court, and Defendants must be immediately and permanently enjoined from enforcing their criminalization of "non-essential business without Due Process," whether against Plaintiffs, a class of businesses equivalent to plaintiffs, or against all criminalized but otherwise lawful business.

**PARTIES**

9. Plaintiff Tanya Rutner Hartman is a citizen of the State of Ohio who owns and operates Gilded Social, LLC.

10. Plaintiff Gilded Social LLC is a Columbus, Ohio bridal shop incorporated with the Ohio Secretary of State.

11. Defendant Amy Action is, and has been at all times relevant to the facts at issue in this case, Director of the Ohio Department of Health.

12. The Director is a state actor unprotected by sovereign immunity for the purposes of this action.

13. The actions of The Director described herein were taken pursuant to official conduct on behalf of the Ohio Department of Health, and were exercised under color of law.

14. At all times relevant to the allegations in this Complaint, each and all of the Defendant's acts alleged herein attributed to the Director were undertaken while acting under the color of regulations, customs, usages, and policies of the State of Ohio and the Ohio Department of Health.

15. Defendant has undertaken and threatens to continue to undertake specific action so as to deprive and/or violate the constitutional rights of the Plaintiffs and others in her individual capacity, as part of her official duties and responsibilities, and in her official capacity of implementing a policy, practice or custom of the State of Ohio and/or the Ohio Department of Health.

16. All actions by the Defendant described herein were undertaken under color of state law and have caused threaten to continue to cause the deprivation of Plaintiffs' rights protected by the United States Constitution and Ohio Constitution.

**FACTS**

17. R.C. 3701.13 delegates to the Ohio Department of Health, amongst other things, "ultimate authority in matters of quarantine and isolation."

18. On March 22, 2020, the Director of the Ohio Department of Health purported to impose a Director's Stay at Home Order, ordering that, "non-essential businesses and operations must cease," and "effective at 11:59pm on March 23, 2020, all persons are to stay at home or their place of residence unless they are engaged in Essential Activities, Essential Governmental Functions, or to operate Essential Businesses and Operations as set forth in this Order."

19. Rather than defining the category articulated as "Essential Businesses and Operations," the Director attempts to name "essential businesses and operations" over the course of three pages and 25 paragraphs.

20. While the standard of "essentiality" may initially appear clear, i.e. "necessary for survival," this list includes, amongst other things, liquor, marijuana, dry cleaners, and the state lottery.

21. The Order further purports to require these essential businesses and operations to "take proactive measures to ensure compliance with Social Distancing Requirements," such as attempting to maintain "six-foot distances" from others and providing hand sanitizer and sanitizing products.

22. On April 2, 2020, the Director renewed this Order, with only minor modifications ("Amended Director's Stay at Home Order"). The Amended Order clarifies the State's intent to rely upon R.C. 3701.352 no punish any violation of "any order the director of or department of health issues" with subjection to "a misdemeanor of the second degree, which can include a fine of not more than $750 or not more than 90 days in jail, or both."

23. The Amended Order further provides for "Dispute Resolution."

24. However, the Dispute Resolution Commission is (1) limited to reviewing situations where "any local health department issues a determination under Section 17 of this Order that is in conflict with a determination issued by a different local health department;" (2) appointed solely by the Director of Health; (3) immune from any right to judicial review, as "the decision of the Dispute Resolution Commission *shall be final*;" and (4) without instruction as to how to allocate the burden of proof.

25. Applying this new power, the Dispute Resolution Commission has clarified that local health departments are limited to answering questions regarding the Order solely "if a public official enforcing the Order has questions."

26. In doing so the Commission, without hearings, has issued a series of copied-and-pasted two-page orders, typically varying from one another by only one sentence.

27. In one such order, the Commission determined that "businesses providing car washing services are essential if operating within the following parameters: 1) employees have no direct interactions with customers; 2) employees do not hand-wash or hand-dry vehicles; 3) employees maintain social distancing and comply with the other requirements outlined in the order; and 4) the number of employees is limited to only those necessary to operate the business within these parameters."

28. Each Order deems "weddings" to be "essential."

29. Each Order was implemented without enabling legislation or administrative rulemaking.

30. While Chapter 119 of the Ohio Revised Code authorizes departure from Notice and Comment administrative rulemaking procedures during emergencies, Defendant failed to take the steps required to entitle her to the use of that procedure. See R.C. 119.03(G)(1).

## JURISDICTION AND VENUE

31. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fifth and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and permanent injunctive relief and damages; and under 42 U.S.C. § 1988, to award attorneys fees.

32. Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.8, as (i) the Defendants are situated within this judicial district and division; and (ii) all of the claims asserted by Plaintiff arose within this judicial district and division.

33. This Court maintains supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367.

34. This Court maintains the authority to certify "unsettled questions of Ohio law" to the Ohio Supreme Court. See *Ohioans Against Corp. Bailouts, LLC v. LaRose,* No. 2:19-CV-4466, 2019 WL 5457002, at 10 (S.D. Ohio Oct. 23, 2019)("Pursuant to Rule 9.01 of the Rules of Practice of the Ohio Supreme Court, a federal court may certify questions of law to the Ohio Supreme Court when "there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court").

35. If in doubt as to Plaintiffs' state-based claims, this Court should so certify queries regarding the Ohio Constitution's guarantees of private property rights as against vagueness, over-delegation, burden-shifting, and equal protection.

## DECLARATORY JUDGMENT AND INJUNCTION

36. Plaintiffs hereby incorporates by reference the allegations in the foregoing paragraphs as if set forth fully herein.

37. In order to prevent violation of Plaintiffs' constitutional rights by Defendant, it is appropriate and proper that a declaratory judgment be issued, pursuant to Fed. R. Civ. P. 57, declaring unconstitutional the Defendant's policies and practices challenged herein.

38. Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that this Court issue preliminary and permanent injunctions prohibiting the Defendant from enforcing their restrictions on Plaintiffs' Due Process rights and other rights to the extent they are unconstitutional, in order to prevent continued and imminent violation of Plaintiffs' constitutional rights.

39. Plaintiffs desire a judicial determination of their rights against Defendants as they pertain to Plaintiffs right to an immediate hearing upon deprivation of their livelihood their closure of their business.

40. In addition, Plaintiffs are entitled to declaratory and injunctive relief such that they need not face prosecution or fines for failing to obtain a permission to safely operate.

**COUNT I**
**VIOLATION OF RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION and SECTIONS 1, 16, and 19 of ARTICLE I OF THE OHIO CONSTITUTION**
**(42 U.S.C. § 1983)**

41. Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

*The Director's Order is Impermissibly Vague*

42. The void-for-vagueness doctrine not only ensures that laws provide "fair warning" of proscribed conduct, but it also protects citizens against the impermissible delegation of basic policy matters "for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

43. Without "clear standards guiding the discretion of public officials" with enforcement authority, there is a risk that those officials will "administer the policy based on impermissible factors."

44. The Director's Order provides no definition of "essentiality."

45. Each of the foregoing standards fails to supply enforcement authorities with sufficient clarity as to how to consistently enforce the Director's regulations without arbitrariness.

46. The absence of a standard fails to permit meaningful judicial review over the Director's orders.

*The State delegates legislative authority without an intelligible principle and the Ohio Department of Health in turn further delegated enforcement of vague standards without an intelligible principle.*

47. The vagueness concerns raised by the State's delegation of "ultimate authority" to the department of health is aggravated by the Department's absence of standards to determine "essentiality," so as to permit judicial review.

48. "Without sufficient limitations, the delegation of authority can be deemed void for vagueness as allowing *ad hoc* decisions or giving unfettered discretion." *Biener v. Calio*, 361 F.3d 206, 215-17 (3rd Cir. 2004).

49. The State's vague delegation, both on its own and in combination with the vagueness of the standard regulating Plaintiffs' conduct, has violated, continues to violate, and will further violate Plaintiffs' Due Process rights.

*The Department of Health has impermissibly failed to afford meaningful hearing to those Ohioans whose businesses it has summarily closed*

50. The Due Process Clause of the Fourteenth Amendment provides that "no State shall ... deprive any person of life, liberty, or property without due process of law."

51. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a substantive choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide 'due process' before making such a decision.

52. The goal is to minimize the risk of substantive error, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard 'in a meaningful manner.'" *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir. 1996), citing *Loudermill v. Cleveland Bd. of Educ.,* 721 F.2d 550, 563 (6th Cir.1983), *aff'd,* 470 U.S. 532, 105 S.Ct. 1487 (1985).

53. Interests in operating a business or earning a living are more than sufficient to invoke procedural due process guarantees. *Johnson v. Morales*, 946 F.3d 911, 935–37 (6th Cir. 2020)("Johnson's interest in her business license is enough to invoke due process protection").

54. "There is no dispute that *never* providing an opportunity to challenge a permit revocation violates due process. Thus, the revocation of [the right to remain in business] without a pre-deprivation hearing or a post-deprivation hearing violated due process." *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 488 (6th Cir. 2014).

55. Even when such property interests are deprived in an "emergency situation," government must provide an "adequate post-deprivation process." *United Pet Supply*, 768 F.3d at 486.

56. These safeguards for liberty are so beyond objection that "[n]o reasonable officer could believe that revoking a permit to do business without providing any pre-deprivation or post-deprivation remedy [is] constitutional." *Id.,* at 488.

57. Putting an Ohioan out of business without any opportunity for a hearing "is one of the rare situations where the unconstitutionality of the application of a statute to a situation is plainly obvious" such that "a clearly established right" is violated, and even qualified immunity is to be denied. *Id.,* at 489.

58. The fundamental requirement of due process is the opportunity to be heard and it is an "opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 (1965).

59. *Further*, even when the "the government has a substantial interest in ensuring the safety of its citizens," a postdeprivation hearing is still required. See *Johnson v. Morales,* 946 F.3d 911, at 923 (6th Cir. 2020).

60. *Finally*, in requiring a postdeprivation hearing, at least with respect to the decimation of one's business and livelihood, it matters not that the deprivation may be only "temporary" in nature. *Fuentes v. Shevin,* 407 U.S. 67, at 84–85 ("[I]t is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment.").

61. "Due process of law requires that plaintiffs be afforded a *prompt* post-seizure, pre-judgment hearing before a neutral judicial or administrative officer." *Krimstock v. Kelly*, 464 F.3d 246, 255 (2d Cir. 2006)(25 day delay for post-deprivation hearing unconstitutional); see also *United States v. James Daniel Good Real Prop.,* 510 U.S. 43, at 56 (1993)("the Due Process Clause requires ... an opportunity for some kind of predeprivation or *prompt* post-deprivation hearing at which some showing of the probable validity of the deprivation must be made").

62. Because "burden-shifting can be a problem of constitutional dimension in the civil context," *Johnson v. Morales*, 946 F.3d 911, 916–40 (6th Cir. 2020), the Constitution requires, in this context, that the State carry the burden of proving why any appealing "non-essential business" must remain closed.

63. Applied here, precedent dictates that this entitles Plaintiffs and other Ohio businesses shut down as "non-essential" to a prompt hearing wherein the State must prove that the business is neither essential nor safe. In the absence of such safeguards, the Director's Order must be immediately enjoined.

64. The Ohio Department of Health is required to supply Ohioans who own businesses it deems "non-essential" with a prompt hearing where the burden is on the Department to justify its decision mandated full closure of those Ohioans' businesses.

65. The Ohio Department of Health is required to supply Ohioans who own businesses it deems "non-essential" with hardship relief, such as narrowing it closure order so as to permit limited safe operations.

66. The Ohio Department of Health has entirely ignored these clear and important safeguards in imposing its "State at Home Orders" indefinitely closing "non-essential businesses," even though the Orders have been renewed and carried on for nearly 30 days at the time of this filing, and even though county health departments alone have been privileged to receive hearings.

67. In an unknown and unknowable but not insignificant number of cases, such as Plaintiffs' case, the Ohio Department of Health would be unable to justify forbidding "non-essential businesses" from reopening on, at minimum, a limited basis.

68. Plaintiffs' business is essential due to the anticipation of the Fall wedding season and the timing of its product deliveries.

69. Plaintiffs business is a "special order" business, meaning that customers place their orders for gowns typically no less than 6 months ahead of their wedding date.

70. Given that September and October are of the most popular months for marriage in in Ohio, it is imperative that our customers are able to shop for their wedding attire immediately so they do not miss the short window of time they have to place their orders and get the dresses in time for their Fall wedding date.

71. Wedding dress designers' "lead times" cannot accommodate a truncated selling season.

72. The wedding industry is, as "essentiality" is contemplated by the Director's Order, "essential": Celebrating love and the traditions surrounding marriage is essential.  See *Obergefell v. Hodges,* 135 S. Ct. 2584, 2599 (2015)("marriage is one of the vital personal rights essential to the orderly pursuit of happiness by free men," and marriage is "the foundation of the family in our society," as "choices about marriage shape an individual's destiny").

73. Weddings are a factor in returning Ohioans' economy and society to normal life.

74. Permitting Plaintiffs to resume business so that they may plan for these events that are scheduled well in advance will supply young people something to look forward to that feels familiar and happy.

75. Plaintiffs are "essential" to not only to Plaintiffs themselves, but also to their employees.

76. Plaintiff Hartman has underwritten her business with a large home equity line of credit, meaning that the State's forced closure of her business needlessly threatens her home as well as her livelihood.

77. Plaintiffs began a new five-year lease in November of 2019, leaving them essential to their landlord as well, who would lose the investment in the improvements he made specifically for my business functions.

78. Gilded Social operates by appointment only, which, along within insisting on clients' punctuality, which permits Plaintiffs to control the number of individuals within their retail space at any given time.

79. Plaintiffs are able to attend to their customers' needs in just one appointment, utilizing virtual assistance when necessary to make those appointments as efficient as possible.

80. Plaintiffs retail store consists of approximately 2,500 square feet, meaning that Plaintiffs can accommodate many clients while still adhering to Social Distancing Requirements (even though Plaintiffs do not anticipate hosting many clients simultaneously).

81. Plaintiffs are able to limit access to numerous spaces and items within our store, so that clients are not touching those spaces or items.

82. Plaintiffs are able to maintain an abundance of masks, gloves, soap and water, and hand-sanitizer within our store, steam clean dresses that have been tried-on in between appointments, and sanitize critical spaces, and we are able to sell our fabric masks to the public.

83. Plaintiffs are able to direct dress-fitting and measurements from a safe distance.

84. Plaintiffs are able to offer curb-side pick-up service for their clients who are simply picking up their dresses.

85. Plaintiffs are unable to fill the many orders that had already-taken prior to the State's Order if they are unable to open on or before May 1, 2020.

86. Without the capacity to open their business on or before May 1, 2020, Plaintiffs business will fail, and either bankruptcy or closure would be a virtual certainty.

87. While the foregoing factors mitigate in favor of a finding that Plaintiffs' business is "essential," or that it is safe for Plaintiffs to operate on a limited basis, neither the Director's Order nor any other law or rule entitles Plaintiffs or others to any hearing where they can explain these factors to a neutral decisionmaker with the power to lift or amend the closure of their business.

88. In *Speiser v. Randall*, 357 U.S. 513, 525-26 (1958), the Supreme Court invalidated a California procedure under which *taxpayer*s had the burden of demonstrating that they were *not* individuals who advocated the overthrow of the government in order to qualify for tax exemptions. See also *Western & A.R.R. v. Henderson,* 279 U.S. at 642 (1929)("[a] statute creating a presumption that is arbitrary, *or* that operates to deny a fair opportunity to repel it, violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property"); *Minski v. U.S.* 131 F.3d 614, 617 (6th Cir., 1942)("[t]he guaranty of the due process clause of the

Fifth Amendment is, that a law shall not be unreasonable, arbitrary or capricious, and we think that the presumptive evidence clauses of the act here involved must fall before the constitutional inhibition").

89. The Department of Health has provided some opportunity for clarification and adaptation of its Order to local health departments, while providing none to Ohio's proprietors of "non-essential businesses."

90. The Ohio Supreme Court has expressed that Due Process requires all inferences to be drawn in favor of *the Ohio property owner rather than against them.*

91. Any hearing that would place the burden on the closed proprietor to prove compliance with vague standards such as "essentiality" would violate Due Process.

92. Plaintiffs face irreparable harm in the form of permanent closure and failure of their business and/or criminal penalties.

93. Ohio Governor and former Ohio Attorney General Mike DeWine maintains a history of using his public office to file lawsuits against bridal shops that are unable to fulfill clients' orders, whether pursuant to bankruptcy or otherwise.  See *https://www.dispatch.com/news/20181129/dewine-sues-dublin-bridal-shop-elegant-bride-over-unfilled-orders.*

94. Plaintiffs have suffered and continue to suffer actual and nominal damages due to the State's failure to supply a hearing, including but not limited to the total deprivation of all or nearly all gross business revenue and personal financial harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and that this Court:

(1) Declare that Department of Health's April 2, 2020 Amended Director's Stay at Home Order's mandate that "non-essential businesses must cease" is unconstitutional on its face due to its failure to supply meaningful Procedural Due Process.

(2) Declare that Department of Health's April 2, 2020 Amended Director's Stay at Home Order's mandate that "non-essential businesses must cease" is unconstitutional as applied to Plaintiffs.

(3) Declare that Department of Health's April 2, 2020 Amended Director's Stay at Home Order's mandate that "non-essential businesses must cease" is unconstitutional as applied to a class of Ohio businesses not previously subject to Ohio Department of Health regulation and licensing.

(4) Issue a preliminary and permanent injunction and temporary restraining order prohibiting Defendant and Defendant's agents from enforcing the mandate that "non-essential businesses must cease," whether against Plaintiffs, against a class of similarly situated business owners who are not otherwise subject to Ohio Department of Health regulation and licensing, or against all Ohioans.

(5) Issue a preliminary and permanent injunction prohibiting Defendant from enforcing or relying on the mandate that "non-essential businesses must cease" so as to prosecute, fine, imprison, or otherwise punish Plaintiffs and others.

(6) If deemed necessary to resolve the case, certify novel issues of state constitutional law articulated in this Complaint to the Ohio Supreme Court for clarification;

(7) Pursuant to 42 U.S.C. §1988 and other applicable law, award Plaintiffs their costs, actual damages, nominal damages and expenses incurred in bringing this action, including their reasonable attorneys' fees;

*and*

(8) Grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully submitted,

*/s/ Maurice A. Thompson*
Maurice A. Thompson (0078548)
1851 Center for Constitutional Law
122 E. Main Street
Columbus, Ohio 43215
Tel: (614) 340-9817
*MThompson@OhioConstitution.org*
*Counsel of Record*

Christopher Finney (0038998)
Finney Law Firm, LLC
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, Ohio  45245
(513) 943-6660 phone
(513) 943-6669 fax
*Chris @FinneyLawFirm.com*

CURT C. HARTMAN  (0064242)
THE LAW FIRM OF CURT C. HARTMAN
7394 Ridgepoint Drive, Suite 8
Cincinnati, Ohio 45230
TEL: (513) 379-2923
*HartmanLawFirm@fuse.net*