**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TANYA RUTNER HARTMAN, and** | **:** | |
| **GILDED SOCIAL,** | **:** | |
| | **:** | |
| **Plaintiffs,** | **:** | **Case No. 2:20-CV-1952** |
| | **:** | |
| **v.** | **:** | **Chief Judge Algenon L. Marbley** |
| | **:** | |
| **AMY ACTON,** | **:** | |
| *In her official capacity as Director of the Ohio* | **:** | |
| *Department of Health*, | **:** | **Magistrate Judge Jolson** |
| | **:** | |
| **Defendant.** | **:** | |

<u>**ORDER**</u>

This matter is before the Court on Plaintiffs' Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2). On April 17, 2020, Defendant filed a response requesting that this Court deny Plaintiffs' motion. This Court held a hearing on the motion for a TRO on April 20, 2020 at 10:00 a.m. For the reasons set forth below, this Court **DENIES** Plaintiffs' Motion for a temporary restraining order.

## I.     BACKGROUND

Tanya Hartman owns and operates Gilded Social, an Ohio bridal shop located in Columbus, Ohio (collectively, "Plaintiffs"). (ECF No. 1 at 2). Business was as usual until March 2020 when Ohio officials confirmed the spread of the novel coronavirus ("COVID-19") within the state of Ohio. (ECF No. 4 at 8-10). On March 22, 2020, the Director of the Ohio Department of Health, Dr. Amy Acton, issued a Stay at Home Order requiring that all "non-essential businesses and operations must cease" until April 6 due to the exponential spread of the virus throughout the state. (*Id*). Dr. Acton issued several other orders to limit the spread of the virus, and the relevant order at issue here is the amended Stay at Home Order issued on April 2, 2020 extending the cessation

of all non-essential business until May 1, 2020 (hereinafter "Order"). This order enumerates and defines the categories of businesses that are considered essential, but bridal shops are excluded from those businesses considered essential. (*Id*.)

Accordingly, Ms. Hartman was required to close Gilded Social's doors and operate the business exclusively online. (ECF No. 4 at 12). Ms. Hartman now brings suit pursuant to 42 U.S.C. § 1983, against Dr. Acton, in her official capacity as Director, and on behalf of Gilded Social and a "class of Ohio businesses not previously subject to Ohio Department of Health regulation and licensing." (ECF No. 1, 2). Plaintiffs argue that the Stay at Home Order is unconstitutional on its face and as applied since it fails to provide a meaningful redress mechanism in violation of the procedural due process requirements of the Fifth and Fourteenth Amendments. *Id.* Hartman also argues that the Director's Order is impermissibly vague, and the statute authorizing the Director to make it is an unconstitutional delegation of legislative power, in violation of the U.S. and Ohio Constitutions. (ECF No. 1 at 7-8). Hartman believes that the state is unable to prove that a wedding dress shop is both non-essential and not capable of being operated in a safe manner. (ECF No. 2 at 3). Hartman requests that this court issue a temporary restraining order—as well as a preliminary and permanent injunction—prohibiting Defendant from enforcing against Plaintiffs and a class of similarly situated businesses the requirement that all "non-essential" businesses cease in person operations. (ECF No. 1). Plaintiffs also request monetary damages and their costs incurred in bringing the action, including attorneys' fees. (*Id*.)

## II. STANDARD OF REVIEW

A Temporary Restraining Order ("TRO") is an emergency measure. *See McGirr v. Rehme*, Case No. 16-464, 2017 U.S. Dist. LEXIS 61151, at *10 (S.D. Ohio Apr. 21, 2017). Federal Rule of Civil Procedure 65(b) requires a Court to examine, on application for a temporary restraining

order, whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). A temporary restraining order is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979). In determining whether to grant or deny a temporary restraining order or a preliminary injunction, courts consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc) (internal quotation marks omitted).

To obtain temporary injunctive relief, it is of paramount importance that the party establish immediacy and irreparability of injury. *See Doe v. Univ. of Cincinnati*, No. 1:15-CV-600, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) (noting that "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo") (citing *Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977)). While a Court is permitted to consider the other factors, immediacy and irreparability of harm are threshold considerations since a temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo." *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015) (citing *Proctor & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 226 (6th Cir.1996)). The "burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one" since the party seeking "the injunction must establish its

case by clear and convincing evidence.'" *Id.* (citing *Overstreet v. Lexington–Fayette UrbanCnty. Gov't,* 305 F.3d 566, 573 (6th Cir.2002); *Honeywell, Inc. v. Brewer–Garrett Co.,* 145 F.3d 1331 (6th Cir.1998)).

### III.    ANALYSIS

#### A.    Standing

Defendant argues that Plaintiffs lack standing to bring this suit on behalf of a "class of Ohio businesses not previously subject" to regulation by the Ohio Department of Health because those businesses are unrelated third parties. (ECF No. 4 at 19). Plaintiffs bear the burden of demonstrating that they have standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that the "party invoking federal jurisdiction bears the burden of establishing these elements"). As a general matter, federal courts adhere to a prudential standing rule that "bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth v. Seldin*, 422 U.S. 490, 491 (1975). There are limited exceptions to this rule, where "the party asserting the right has a 'close' relationship with the person who possesses the right, and … there is a 'hindrance' to the possessor's ability to protect his own interests." *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 208 (6th Cir. 2011) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)) (internal quotation marks omitted). During the hearing, Plaintiffs conceded that they are bringing this solely in an individual capacity. Nonetheless, this Court will address the issue of standing below.

Here, Plaintiffs fail to meet this standard since Plaintiffs have failed to demonstrate that they have a close relationship with any of the other businesses they seek to represent. *See Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004) (attorneys did not have standing to bring suit on behalf of prospective clients who are not ascertained since they had "no relationship at all" with them). Here,

too Plaintiffs have not demonstrated that they have any relationship at all with similarly situated and yet unascertained businesses, let alone the "close" relationship necessary to ensure that the litigant represents the rights of others with the "necessary zeal and appropriate presentation." *Id.* at 129. Plaintiffs have also failed to carry their burden of demonstrating that similarly situated businesses could not bring their own suits to challenge any alleged violations of their rights. *Id.*

Furthermore, because this Court determines that Plaintiffs have failed even to demonstrate a cognizable injury to themselves, they may not bring claims on behalf of a class of hypothetical business owners affected by the Director's Order, since "whatever injury may have been suffered is peculiar to the individual [business owner] concerned, thus requiring individualized proof of both the fact and extent of injury and individual awards." *Warth,* 422 U.S. at 492.

### B.    Jurisdiction

In their briefing, Plaintiffs suggest that the Health Director's Stay at Home Order arises from an unconstitutional delegation of authority. Alternatively, Plaintiffs argue that even if such delegation was permissible, the Director failed to comply with the notice, comment, and hearing requirements set forth in Ohio Revised Code § 119, which governs administrative procedures. Due to these deficiencies, Plaintiffs maintain that the Director's Order warrants zero deference. During the hearing, Plaintiffs conceded these claims, noting that they are only pursuing their procedural due process claims pursuant to federal law. Nonetheless, this Court will address this issue.

Article II, Section 1 of the Ohio Constitution vests the state's legislative authority in the General Assembly, consisting of the Senate and House of Representatives. The Ohio Supreme Court has made clear that the General Assembly "cannot delegate its legislative power and that any attempt to do so is unconstitutional." *Belden v. Un. Cent. Life Ins. Co.*, 143 Ohio St. 329, 342 (1944). Nevertheless, "legislative acts granting to a board or an administrative agency quasi-

5

legislative or quasi-judicial power, have been uniformly sustained where the General Assembly has laid down the policy and established the standards while leaving to an administrative agency the making of subordinate rules within prescribed limits and the determination of facts to which the legislative policy is to apply." *Id.* Importantly, the need for strict standards and guidelines is relaxed when the delegation relates to matters of public health and safety:

> As a general rule a law which confers discretion on an executive officer or board without establishing any standards for guidance is a delegation of legislative power and unconstitutional; but, when the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety, or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations.

*State v. Schreckengost*, 30 Ohio St. 2d 30, 32-33 (1972).

Under Ohio Revised Code § 3701.13, the Ohio Department of Health has been given authority over the "supervision of all matters relating to the preservation of the life and health of the people" and has "ultimate authority in matters of quarantine and isolation." O.R.C. § 3701.13. To that end, the Department of Health has the power to "make special or standing orders . . . for preventing the spread of contagious or infectious diseases[.]" *Id.* It was under this authority that Health Director Acton issued the Department's April 2, 2020 Stay at Home Order.

While Plaintiffs take issue with the General Assembly's delegation of power to the Department of Health, Plaintiffs seek relief in the wrong forum. This Court has previously found that "there is no independent federal constitutional doctrine of excessive delegation of state legislative power." *Wayne Watson Enters., LLC v. City of Cambridge*, 243 F. Supp. 3d 908, 927 (S.D. Ohio 2017) (Marbley, J.) (quoting *United Beverage Co., Inc. v. Ind. Alcoholic Beverage Comm'n*, 760 F.2d 155, 157, 159 (7th Cir. 1985)). In other words, the Constitution does not "place[] any general restraint on the delegation of state power to administrators or generally require[] state power to be delegated according to well defined standards." *Id.* (quoting *Geo-Tech*

6

*reclamation Servs., Inc. v. Hamrick*, 886 F.2d 662, 666 n.2 (4th Cir. 1989)).  Because Plaintiffs raise a claim against a state official, under state law, that would impact the state itself, any non-delegation claim is barred by Eleventh Amendment Sovereign Immunity.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984) ("[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when -- as here -- the relief sought and ordered has an impact on the State itself."). Similarly, to the extent Plaintiffs seek to invalidate the Director's Order for a failure to follow the administrative procedures set forth in O.R.C. § 119, Plaintiffs raise an issue of state law.[1]

### C.    Merits

### 1.    Irreparability of Harm

The first factor the Court must consider is the irreparability of harm that the Plaintiffs would face absent injunctive relief. Plaintiffs raise two harms stemming from the Health Director's Order: (1) the deprivation of the constitutional right to due process; and (2) the "untenable decimation" of their business. (ECF No. 2 at 16). Generally, harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). The Supreme Court, however, has suggested that the threat of bankruptcy can meet the standard for granting interim relief. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975).

Here, Plaintiffs have failed to meet their burden of providing evidence that bankruptcy or permanent closure is imminent. Their motion for a temporary restraining order focuses solely on the irreparable harm they face as a result of the violation of their constitutional rights. Their

---

[1] *See* O.R.C. § 119.02 ("Every agency authorized by law to adopt, amend, or rescind rules shall comply with the procedure prescribed in sections 119.01 to 119.13, inclusive, of the Revised Code, for the adoption, amendment, or rescission of rules. Unless otherwise specifically provided by law, the failure of any agency to comply with such procedure shall invalidate any rule or amendment adopted, or the rescission of any rule.").

complaint relies only on a bare allegation of "bankruptcy or closure" without any specifics as to the financial state of their business nor any affidavits to support these claims. Accordingly, the threat of bankruptcy is speculative at best and a finding of irreparable harm with no evidence in the record to support it would be inappropriate. *C.f. Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) (affirming grant of preliminary injunction noting that irreparable harm was established where there was uncontested evidence in the record that "in the absence of injunctive relief … [plaintiff] will be unable to operate its business and the business will suffer economic collapse or insolvency.").

Furthermore, where irreparable harm is based upon a violation of a plaintiff's constitutional rights, that violation, no matter how temporary, is sufficient to show irreparable harm. *See Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 578 (6th Cir. 2002); *Planned Parenthood Southwest Ohio Region v. Hodges*, 138 F.Supp.3d 948, 960 (S.D. Ohio 2015) ("[W]hen a constitutional right is being threatened or impaired, a finding of irreparable harm is mandated.")

As indicated below in Section C (3)(b), however, Plaintiffs have failed to demonstrate a violation of their due process rights, and consequently, a likelihood of success on the merits. Where a Plaintiff fails to show a likelihood of success on the merits of their claim that their constitutional rights were violated, a finding of irreparable harm is not warranted. *See McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012) (affirming denial of preliminary injunction noting that because plaintiff "does not have a likelihood of success on the merits . . . his argument that he is irreparably harmed by the deprivation of his First Amendment rights also fails."); *Overstreet*, 305 F.3d at 578 (6th Cir. 2002) (denying injunctive relief noting that plaintiff's "argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit"

since he failed to show a likelihood of success on the merits); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 867 (S.D. Ohio 2008) (denying TRO noting "[p]laintiff has not established a strong likelihood of success on the merits of its misappropriation of trade secrets claim. Because it has not been shown that Defendants misappropriated Plaintiff's trade secrets, irreparable harm cannot be presumed.").

### 2.      Immediacy of Harm

In conjunction with the potential of irreparable harm absent injunctive relief, the Court must also consider the immediacy of the harm Plaintiffs face. Fed. R. Civ. P. 65 (b)(1)(A); *Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Benefit Programs*, No. 2:13-CV-357, 2013 WL 12368588, at *2 (S.D. Ohio Apr. 25, 2013) (denying in part TRO on basis that plaintiff failed to establish immediate harm where preliminary injunction hearing would occur prior to date that alleged harm would come to pass).

Plaintiffs argue that if they are not permitted to reopen their business on or before May 1, 2020, their business will fail. (ECF No. 1 at 12). Plaintiffs add that as a result of the Stay at Home Order their business has been closed for 23 days at the time they filed the motion for a temporary restraining order. (ECF No. 2 at 3). Plaintiffs do not provide any reason why waiting an additional two weeks to re-open will necessarily result in permanent closure to their business. Accordingly, Plaintiffs fail to show that the immediacy of the harm they allege.

### 3.      Likelihood of Success on the Merits

This factor weighs against a grant of injunctive relief. This Court determines that Plaintiffs have not shown a likelihood of success on the merits since the Director's Order is: (a) sufficiently clear and provides fair warning of what conduct is proscribed; and (b) is also a generally applicable order which does not trigger procedural due process's hearing requirement.

### a. Void for Vagueness

In their briefing, Plaintiffs argue that the Order is void for vagueness under the due process clause of the Fifth and Fourteenth Amendments and the Ohio constitution. Plaintiffs appeared to concede this claim during the hearing, but this Court will address the issue of the vagueness of the Director's Order nonetheless. For the reasons set forth below, this Court finds Plaintiffs unlikely to succeed on the merits of this claim, and any alleged irreparable harm from the Department's Order is not a result of the Order's vagueness.

The Director's Order criminalizes violations with 90 days in jail and a fine of not more than $750. (ECF No. 2 at 2). A criminal law violates due process when "it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). The statute or regulation must: (1) "give the person of ordinary intelligence a reasonable opportunity know what is prohibited"; (2) "provide explicit standards for those who enforce them" to prevent "arbitrary and discriminatory enforcement"; and (3) not impinge upon first amendment rights. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *State v. Varsel*, 11 N.E.3d 327, 330 (Ohio Ct. App. 2014).

Plaintiffs argue the Order is unconstitutionally vague because it "provides no definition of 'essentiality.'" (ECF No. 1 ¶ 44). Plaintiffs have not alleged that the Order is being enforced in an arbitrary, capricious, or discriminatory manner. Rather, they allege in generalities that the order has the potential for arbitrary enforcement because the Order "fails to supply enforcement authorities with sufficient clarity as to how to consistently enforce the Director's regulations." (ECF No. 1 ¶ 45).

The Department of Health's Stay at Home Order is not unconstitutionally vague because it provides clear and fair warning of what conduct is proscribed. State officials have authority to enforce the Order pursuant to Ohio Rev. Code §§ 3701.352 and 3701.56.[2] Plaintiffs have not sufficiently alleged that they did not have adequate notice of the proscribed conduct or that there is a risk of arbitrary, capricious, or discriminatory enforcement. The Order makes clear that all businesses, except essential businesses as defined in the Order, must cease during the applicable time period. (ECF No. 1 Ex. 1 at 1). The Order provides a complete list of all businesses deemed essential. These include healthcare and public health operations, human services operations, essential infrastructure, essential government functions, and the following:

> (a) workers identified in the Cybersecurity & Infrastructure Security Agency ("CISA") list; (b) stores that sell groceries and medicine; (c) food, beverage, and licensed marijuana production and agriculture; (d) charitable organizations that provide charitable and social services; (e) religious entities; (f) media; (g) first amendment protected speech; (h) gas stations and transportation businesses; (i) financial and insurance institutions; (j) hardware and supply stores; (k) critical trades; (l) post offices and delivery services; (m) educational institutions; (n) laundry services; (o) restaurants providing delivery or carry-out; (p) businesses selling work-from-home supplies; (q) supplies for essential businesses and operations; (r) transportation; (s) home-based care and services; (t) residential facilities and shelters; (u) professional services; (v) manufacturing companies for essential services; (w) labor unions; (x) hotels and motels; (y) funeral services.

(*Id.* at 5-8). The Order provides detailed definitions for each of these categories and makes clear that business operations that do not fall under these categories are prohibited. Plaintiffs had clear notice that their wedding dress business fell into the proscribed category of non-essential business operations. The crux of their argument is not that the Order is vague or unclear as to whether their

---

[2] Section 3701.352 provides: "[n]o person shall violate any rule the director of health or department of health adopts or any order the director or department of health issues under this chapter to prevent a threat to the public caused by a pandemic, epidemic, or bioterrorism event." Section 3701.56 provides: "[b]oards of health of a general or city health district, health authorities and officials, officers of state institutions, police officers, sheriffs, constables, and other officers and employees of the state or any county, city, or township, shall enforce quarantine and isolation orders, and the rules the department of health adopts."

business is essential, but that they were not provided adequate procedures to challenge the determination that their business is non-essential. Therefore, the Court will focus its TRO analysis on Plaintiffs' procedural due process claim.

### b.    Procedural Due Process

The Supreme Court has long recognized the power of states to "to enact quarantine laws and health laws of every description" pursuant to their police power. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 (1905) (upholding constitutionality of state law mandating vaccination of all adults and noting "that the state may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety"). In *Jacobson*, the Supreme Court reiterated the fundamental principle that "persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state." *Id*. at 26.

To be sure, a state's power to legislate in this area has limits and is considered unconstitutional if it "has no real or substantial relation to [the goal of protecting public health or safety], or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 31. Here, the Director's Stay at Home Order is clearly related to stemming the spread of the virus. As discussed in Defendant's Response, and this Court's General Orders closing the federal Courthouse to the public, COVID-19 is a highly infectious disease that spreads easily amongst individuals. Social distancing measures have been implemented across the United States to curb the spread of the disease. (See ECF No. 4 at 8-10).

Even where the state enacts an order pursuant to its police powers to stem the spread of an infectious disease, the constitution's guarantees continue to operate as limits to action. *See Pre-Term Cleveland, v. Attorney General of Ohio, et al.*, 1:19-cv-00360, ECF No. 43 (S.D. Ohio March

30, 2020) (granting in part TRO enjoining application of state order restricting non-essential surgeries due to COVID-19 to abortion providers); *On Fire Christian Ctr., Inc. v. Fischer*, No. 3:20-CV-264-JRW, 2020 WL 1820249, at *6 (W.D. Ky. Apr. 11, 2020) (granting TRO enjoining city from prohibiting drive-in church services due to COVD-19).

Plaintiffs allege that their procedural due process rights were violated by Director of the Department of Health's Order closing all non-essential businesses since the Order deprives them of their right to operate their business without a hearing at a meaningful time. To establish a procedural due process claim, a plaintiff must show that: "(1) [s]he had a life, liberty, or property interest protected by the Due Process Clause; (2) [s]he was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

Usually, due process requires that a hearing be conducted before a deprivation of a property or liberty interest occurs. A post-deprivation hearing is sufficient, however, when "a government official reasonably believed that immediate action was necessary to eliminate an emergency situation."[3] *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 485–86 (6th Cir. 2014). A hearing is not required at all, however, in those circumstances where the State has issued a generally applicable law or order. *See Neinast v. Bd. of Trustees of Columbus Metro. Library*, 346 F.3d 585, 596–97 (6th Cir. 2003) ("Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard.").

A plaintiff must first demonstrate that she possessed a protected property or liberty interest and was deprived of that interest before the Court considers whether the process provided to the plaintiff in conjunction with the deprivation, or lack thereof, violated her rights to due process.

---

[3] Plaintiffs do not challenge that a pre-deprivation hearing was not necessary, but rather, they claim they were deprived of their due process rights because they did not receive a post-deprivation. (ECF No. 2 at 7).

*Wedgewood Ltd. P'ship I. v. Twp. of Liberty, Ohio*, 456 F. Supp. 2d 904, 934 (S.D. Ohio 2006); *Hamilton v. Myers,* 281 F.3d 520, 529 (6th Cir.2002); *LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1108 (6th Cir.1995) ( "[I]n a section 1983 due process claim for deprivation of a property interest, a plaintiff first must show a protected property interest, and only after satisfying this first requirement can a plaintiff prevail by showing that 'such interest was abridged without appropriate process.' "). Property interests protected by the due process clause must be more than abstract desires for or attractions to a benefit. *See Roth,* 408 U.S. at 577, 92 S.Ct. 2701. The due process clause protects only those interests to which one has a "legitimate claim of entitlement." *Id.* This has been defined to include "any significant property interests ... including statutory entitlements." *Brotherton v. Cleveland,* 923 F.2d 477, 480 (6th Cir.1991) (internal citations and quotation marks omitted). Property interests are not created by the Fourteenth Amendment, rather they are created and defined by independent sources, such as state law. *See id.* at 480 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). State supreme court decisions are controlling authority for such determinations. *See id.; Hamilton v. Myers,* 281 F.3d 520, 529 (6th Cir.2002).

Here, Plaintiffs argue that they have a constitutional right to operate the physical aspect of their business and that the Government's order classifying select businesses as essential without providing a redress mechanism violated their right to due process. Defendants do not contest the general proposition that individuals have a property interest in continuing to operate their businesses, but instead claim that this right is not and has never been absolute. (ECF No. 4 at 28-29). According to defendants, the right to operate a business is, as a matter of course, subject to an extensive regulatory framework which includes rules requiring businesses to abide by Health Department statutes. (*Id.* at 29.) The Sixth Circuit has determined that "due process protects an

14

interest in the continued operation of an existing business" but also recognized that this was not an "*unfettered* freedom" and was still subject to a state's regulatory framework. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611-12 (6th Cir. 2006). Here, too, the Plaintiffs do have a constitutional right to continue to operate their business. The orders regarding closure of businesses were only recently put in place and Gilded Social has been operating a physical store in the state since at least 2018. Thus, just as in those cases where the Sixth Circuit determined that an existing permit or license holder has a property interest that a new applicant would not, so too do Plaintiffs have a right to continue to operate their existing business in the manner they had operated it prior to the Director's Order. *Id*. at 611 (citing *Wojcik v. City of Romulus,* 257 F.3d 600, 609–10 (6th Cir.2001)).

A person adversely affected by a law of general applicability has no due process right to a hearing since the law's generality "provides a safeguard that is a substitute for procedural protections." *Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004). The Supreme Court of the United States has long observed that the rights of an individual affected by a law of general applicability "are protected in the only way that they can be in a complex society, by [the affected individual's] power, immediate or remote, over those who make the rule." *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (noting that an individual's due process rights are not violated by a law of general applicability since "the legislative determination provides all the process that is due."). The Supreme Court has determined that this exception to due process applies even to agency action—so long as the agency's actions are prescriptive or legislative as opposed to adjudicative. *See United States v. Florida East Coast Ry.*, 410 U.S. 224 (1973) (determining that no due process right to hearing was triggered by agency action where it was

applicable "across the board all common carriers" and "no effort was made to single out any particular railroad for special consideration based on its own peculiar circumstances."). The fact that an agency's order "may in its effects have been thought more disadvantageous by some . . . than by others does not change its generalized nature." *Id.* at 246.

The State's Order directing non-essential businesses to cease operating their physical locations did not violate Plaintiffs' due process rights because the Director's Order was a generally applicable order affecting thousands of businesses, and not a decision targeting an individual or single business. *See Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 216 (6th Cir. 2011) (noting that "the legislative process provides all the process that is constitutionally due when a plaintiff's alleged injury results from a legislative act of general applicability") (internal quotation marks omitted); *Neinast v. Bd. of Trustees of Columbus Metro. Library*, 346 F.3d 585, 596–97 (6th Cir. 2003) (determining that rule requiring patrons to wear shoes established by director of library was rule of general applicability and thus did not "give rise to a due process right to be heard."). In *Smith*, the Sixth Circuit determined that a county school board of commissioners did not violate the due process rights of teachers who worked at an alternative school that the board decided to close, because the "the Board was acting in a legislative capacity when it abolished the alternative school." 641 F.3d at 216. Importantly, the Sixth Circuit rejected "formalistic distinctions between 'legislative' and 'adjudicatory' or 'administrative' government actions" noting that a rule of general applicability is properly considered legislative based on nature of the order. *Id.*

Moreover, Plaintiffs do not contest, and in fact argue that the Director's Order is legislative in nature. (ECF No. 2 at 13). Plaintiffs' reason for making this claim is to argue that as a legislative act, it constituted an impermissible delegation of authority. (*Id.*) As indicated above in Section III (B), however, the propriety of the General Assembly's delegation of authority to the Director (and

whether that delegation is an impermissible legislative delegation) to establish rules relating to quarantine, isolation, and the preservation of life  is a matter of state law. The fact that this Court is precluded from determining the delegation issue pursuant to the Ohio constitution, does not prevent this court from determining that whether legislative or administrative, Dr. Acton's order was of "general applicability" and thus did not violate Plaintiffs' due process rights pursuant to the United States Constitution. *Neinast*, 346 F.3d 585, 596–97 (6th Cir. 2003). In *Neinast*, the Sixth Circuit considered a comparable situation where Plaintiff brought a § 1983 claim against the Board of Trustees of a Columbus library regarding a rule promulgated by the Director of the Library requiring patrons to wear shoes. The Sixth Circuit determined the Director's rule did not implicate a right to be heard since it was a "governmental determination of a general nature that affect[ed] all equally." *Id.* The Sixth Circuit refused to determine whether the Board's delegation of authority to the Director to establish the rule was constitutional, since § 1983 "is thus limited to deprivations of federal statutory and constitutional rights. It does not cover official conduct that allegedly violates state law." *Id.* at 597.

Plaintiffs argue that they are entitled to a post-deprivation hearing, but the cases they cite to for support all relate to instances where the deprivation was targeted to a particular individual, business, and/or fundamental right, and not instances where the government enacted a generally applicable rule. See *Krimstock v. Kelly*, 464 F.3d 246 (2d Cir. 2006) (owners of vehicles seized by city as "instrumentalities of a crime" were entitled to hearing to challenge validity seizure); *United States v. James Daniel Good Real Prop.,* 510 U.S. 43 (1993) (property owner who pled guilty to drug charges was entitled to hearing after his home was seized subject to civil forfeiture); *State v. Hochhausler*, 1996-Ohio-374, 76 Ohio St. 3d 455, 463, 668 N.E.2d 457 (driver's right to due process was not violated when his license was suspended pursuant to administrative license

suspension procedure); *FDIC v. Mallen,* 486 U.S. 230 (1988) (bank official's suspension from position following indictment did not violate due process where official received hearing, even though hearing was delayed 90 days); *Zinermon v. Burch,* 494 U.S. 113 (1990) (patient's right to due process violated where he was "voluntarily" admitted to mental health treatment facility while heavily medicated and staff took no steps to determine whether the was mentally competent to sign admission forms); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 547 (1985) (terminated school district employee entitled to pre-termination opportunity to respond); *Barry v. Barchi,* 443 U.S. 55, 99 S. Ct. 2642, 61 L. Ed. 2d 365 (1979) (summary suspension of horse-racer's license violated his right to due process where he was not assured a timely post-suspension hearing); *Johnson v. Morales,* 946 F.3d 911 (6th Cir. 2020) (restaurant owner whose business license was suspended stated claim for violation of procedural due process based on government's failure to provide pre-deprivation hearing). Here, no enforcement action was taken to single Plaintiffs out or deprive them of an individually held entitlement due to alleged wrongdoing. Instead, the Director set out a widely applicable Order intended to shut down the physical operations of all non-essential businesses.

Plaintiffs also cite to cases where courts have issued injunctions or TROs to prevent the closure of abortion clinics or to prevent prohibition of drive-thru church services for alleged health and safety justifications. This Court finds the comparison to such cases inapposite. Those cases implicated a fundamental right, subject to a higher standard of review than rational basis review, and singled out abortion clinics and church services for closure. Courts found the irreparable harm of denying access to a constitutionally protected and time-sensitive medical procedure was strong and outweighed the minimal burden on the state to provide pre-deprivation hearings. *See Planned Parenthood Southwest Ohio Region v. Hodges,* 138 F. Supp. 3d 948, 957 (S.D. Ohio 2015) (issuing

18

a preliminary injunction and finding plaintiffs' interest in the continued operation of abortion clinics outweighed the burden on the state in providing a pre-deprivation hearing); *Women's Med. Prof. Corp. v. Baird*, 438 F.3d 595, 614 (6th Cir. 2006) ("[t]he state has not argued that granting a pre-deprivation opportunity to be heard would impose any burden or that any public policy reason existed for shutting down the clinic's operations simultaneously with the denial of the license, and WMPC's interest in continuing to operate its business is strong"). More recently, states could not demonstrate any alleged health benefit to singling out closure of abortion clinics that would outweigh the burden on a fundamental right. *See Pre-term Cleveland v. Attorney Gen. of Ohio* No. 1:19-cv-00360, slip op. at 2-3 (S.D. Ohio Mar. 30, 2020) (affirmed by the Sixth Circuit Court of Appeals in Case No. 20-3365, Doc. 23-1) ("Defendants have not demonstrated to the Court, at this point, that Plaintiffs' performance of these surgical procedures will result in any beneficial amount of net saving of PPE in Ohio such that the net saving of PPE outweighs the harm of eliminating abortion"). Similarly in *On Fire Christian Ctr*, the Court found that while the State had a compelling interest in stemming the spread of disease, it did not even come close to narrowly tailoring its efforts to advance that interest where they prohibited drive-thru religious services but not "a multitude of other non-religious drive-ins and drive-throughs." 2020 WL 1820249, at *6 (W.D. Ky. Apr. 11, 2020) (granting TRO enjoining city from prohibiting drive-in church services due to COVID-19).

During the hearing, Plaintiffs also cited this Court's prior opinion in *Wedgewood Ltd. P'ship I. v. Twp. of Liberty, Ohio*, 456 F. Supp. 2d 904 (S.D. Ohio 2006) to support their argument that the state's order is administrative and not legislative, and that as an administrative act the Order is subject to procedural due process. As indicated above, both the Supreme Court and the Sixth Circuit have confirmed that administrative orders can qualify as legislative acts of general

applicability, so long as they are not adjudicative. *See e.g., United States v. Florida East Coast Ry.*, 410 U.S. 224 (1973). Furthermore, in *Wedgewood*, this Court determined that defendants' actions were adjudicative and not legislative in nature. 456 F. Supp. 2d 935. This Court specifically noted that the *Wedgewood* defendants' actions were targeted toward plaintiff since the instructions that the *Wedgewood* defendants issued specifically referred to plaintiff's controversy with the township regarding the building of a Wal-Mart; the instructions were issued in response to and only after plaintiff filed a variance application; and ultimately, the instructions were a thinly veiled attempt to thwart plaintiff's attempts to build a Wal-Mart. *Id*. at 935–36. None of those factors exists here, where the Order applies generally to all non-essential businesses, does not refer to any specific business as non-essential, nor specifically targets a non-essential business in any way.

Accordingly, because the Director's order applied to all non-essential businesses and was not a decision targeting Plaintiff's business individually, Plaintiff's constitutional right to procedural due process was not violated. *See Bi–Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) (noting even though an individual's property rights may be affected by legislative action, "[w]here a rule of conduct applies to more than a few people, it is impracticable that everyone should have a voice in its adoption"); *Pickney Bros., Inc. v. Robinson*, 1999 WL 801514, at *4 (6th Cir. Sept. 30, 1999) ("Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard. But, when a relatively small number of persons are affected on individual grounds, the right to a hearing is triggered.").

### c.    Equal Protection Claim

Plaintiffs did not brief this issue, but suggested during the hearing that since the Director's Order provides a limited redress mechanism it violates the equal protection clause since it permits some, but not all, businesses a hearing. Plaintiffs argued that the limited redress mechanism's effect was that only larger businesses or companies would be permitted to challenge their classification since smaller businesses only operate in one county and a hearing is only granted if two counties disagree as to whether a particular business is not essential. The Government's response to this argument was that its Order provides a limited hearing mechanism, which would resolve disputes between counties about how this Order should be construed and applied. The State argued that this dispute resolution commission is necessary to ensure that the Order is consistently applied. The Government also argued that its reason for providing only a limited redress mechanism is that it does not have the resources to provide a hearing to every single non-essential business affected by the Director's Order.

The Supreme Court and the Sixth Circuit both recognize "[t]he power of the state to provide for the general welfare of its people" and "authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against" harm. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 692 (6th Cir. 2014) (internal quotation marks omitted) (quoting *Dent v. West Virginia,* 129 U.S. 114, 122, 9 S. Ct. 231, 32 L. Ed. 623 (1889)). The limited review mechanism in the Director's Order seeks to prevent harm by ensuring consistent application throughout the state. Plaintiffs have not shown that the limited review mechanism implicates a fundamental right[4] or is limited based on some suspect classification (on the basis of race,

---

[4] Due process is a fundamental right where a property or liberty interest is infringed upon. Here, however, this Court has already determined that no right to a pre or post deprivation hearing was triggered since the Director's Order was a rule of general applicability.

gender, etc). *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993) (noting that where the challenged government action does not implicate a fundamental right or suspect class it "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.") (internal citations omitted). Accordingly, where a regulatory scheme neither implicates a fundamental right nor creates a suspect classification, rational basis review applies." *Liberty Coins,* 748 F.3d at 693.

Under rational basis review, the State's "legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data" particularly where the "legislature must necessarily engage in a process of line-drawing." *FCC,* 508 U.S. at 315–16. In those instances:

> [d]efining the class of persons subject to a regulatory requirement—much like classifying governmental beneficiaries—inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration."

*Id*. (internal quotation marks omitted). In this case, the challenged action is the provision of a hearing mechanism for some but not all businesses. Because the government's decision to provide a limited redress mechanism to sort out inter-county disputes is not "line-drawing" on the basis of a suspect class, its review mechanism must only be rationally related to a legitimate government interest.

Here, the Government's goal was to make sure the Director's Order is applied consistently in order to stem the spread of the pandemic. In order to achieve that goal. the Government empowered a commission to resolve conflict between counties. The Government's goal of achieving consistency is thus rationally related to the means applied to achieve that goal. The state has limited resources to allocate to any review mechanism and they chose to allocate their limited resources to providing hearings when counties disagreed as to how the Order should

be applied. This review mechanism is rationally related to the Government's interest in consistent application of its Stay at Home Order. Accordingly, the rational basis review test is satisfied, and the Government's actions do not violate the equal protection clause.

### 4. Harm to Others, Public Interest, Balance of Factors

The final two factors—the balance of equities and the public interest—"merge when the government opposes the issuance of a temporary restraining order because 'the government's interest is the public interest.'" *Fawzi Zaya, Petitioner, v. Rebecca Adducci, et al., Respondents.*, No. 20-10921, 2020 WL 1903172 (E.D. Mich. Apr. 18, 2020) (quoting *Pursuing America's Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 512 (D.C. Cir. 2016)).

These two factors also weigh in favor of denying Plaintiff's motion for a temporary restraining order. While the immediacy and irreparability of harm to Plaintiffs is speculative, the harm to the public if the Director's order is enjoined is potentially catastrophic. The World Health Organization has declared COVID-19 to be a pandemic, and both the Governor of Ohio and the President have declared a state of emergency due to the rapid and exponential spread of the virus. (ECF No. 4 at 9-10). Furthermore, the mitigating measures in Director Acton's Stay at Home Order have helped to decrease the spread of the virus. As a result of aggressive mitigation efforts, Ohio has fewer COVID-19 cases than neighboring states with comparable populations. *Id*. at 9. As indicated in Defendant's brief, COVID-19 is a new disease that results in hospitalization for approximately 29% of those who contract the virus, and death in approximately 4% of confirmed cases. *Id*. If the Director's Order is enjoined, it is not merely livelihoods, but lives that would be put at risk, and the State has an interest in public health and the safety of its citizens. *See Neinast*, 346 F.3d at 594 (6th Cir. 2003) ("Courts consistently have upheld statutes primarily directed at preventing injury to an individual on the basis of the impact upon the general public."); *On Fire*

*Christian Ctr., Inc. v. Fischer*, No. 3:20-CV-264-JRW, 2020 WL 1820249, at *10 (W.D. Ky. Apr. 11, 2020) ("In considering whether a TRO is in the public interest, 'a court must at the very least weigh the potential injury to the public health when it considers enjoining state officers from enforcing emergency public health laws.') (internal citations omitted).

Plaintiff has failed to demonstrate immediacy and irreparability of harm and likelihood of success on the merits. Furthermore, enjoining the Director's Order poses a risk to human life. Accordingly, the balance of the factors counsels against injunctive relief.

## IV.    CONCLUSION

For these reasons stated above, this Court **DENIES** Plaintiffs' motion for a temporary restraining order. (ECF No. 2).

The Preliminary Injunction hearing will be held on **Monday, May 11, 2020 at 10:00 a.m.** before the Honorable Algenon L. Marbley. The Court will provide further instructions closer to the time of the hearing regarding whether the hearing will be held telephonically or electronically, and the procedures that will be followed. The Court will not continue the hearing date except upon written motion supported by an affidavit demonstrating exceptional circumstances, made immediately upon the party's or counsel's receipt of notice of the existence of the exceptional circumstances.

Due to the nature of this case and the fact that the parties have addressed all of the preliminary factors in their briefing, this Court has determined that no further briefing is necessary for this hearing. Plaintiffs, however, are entitled to file a reply to Defendant's response. **Plaintiff's reply is due by April 30, 2020.**

The Court shall handle all discovery disputes for the purposes of the Preliminary Injunction briefing. The parties, or a party may move to consolidate the Preliminary Injunction hearing with the trial on the merits. This motion should be brought prior to April 30, 2020.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  April 21, 2020**