UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **TANYA RUTNER HARTMAN,** *et al.*, | Case No. 2:20-CV-1952 |
| Plaintiffs, | Chief Judge Marbley |
| v. | Magistrate Judge Jolson |
| **AMY ACTON,** *in her official capacity as Director of the Ohio Department of Health and in her personal capacity,* | AMENDED COMPLAINT for DECLARATORY JUDGMENT, INJUNCTIVE RELIEF and DAMAGES |
| Defendant. | |

Now comes Plaintiffs TANYA RUTNER HARTMAN and GILDED SOCIAL, LLC, who, in support of their Amended Complaint, allege as follows:

## INTRODUCTION

1. This is an action for declaratory judgment, permanent injunction, and damages pursuant to 42 U.S.C. §1983, arising from Defendant's unconstitutional conduct, policies, practices, regulations, restrictions, threats, intimidation, and/or harassment.

2. While Amy Acton, as the Director of the Ohio Department of Health, may have certain latitude to regulate so as to ameliorate the effects of a pandemic, that latitude remains subject to constitutional limits, including needing to comply with the Due Process Clause of the Fourteenth Amendment.

3. Nonetheless, the Ohio Department of Health and Amy Acton claim the authority to select those businesses which fall within the category of being "essential" versus "non-essential", and to afford those in the latter no recourse to contest either the categorization of one's business or the ability to operate in a safe manner.

4. However, Plaintiffs are still entitled to constitutional due process, and Amy Acton, through her unilateral decree and fiat, has violated the Plaintiffs' due process rights by not providing or allowing for an immediate hearing wherein, amongst other things, the unilateral conclusions regarding the continued operations of Plaintiffs' businesses may be addressed and adjudicated.

5. As a direct result of the unconstitutional conduct and practices of Amy Acton, as well as the policy, practice of custom of the Ohio Department of Health, Plaintiffs faced an imminent risk of criminal prosecution and extensive daily fines, or in the alternative, decimation of their business, livelihood, and economic security, as well as continued irreparable harm to their rights under the Fourteenth Amendment to the United States Constitution.

## PARTIES

6. Plaintiff Tanya Rutner Hartman is a citizen of the State of Ohio who owns and operates Gilded Social, LLC.

7. Plaintiff Gilded Social LLC is a bridal shop based in Franklin County, Ohio, and incorporated with the Ohio Secretary of State.

8. Defendant Amy Action is, and has been at all times relevant to the facts at issue in this case, Director of the Ohio Department of Health.

9. The Director is a state actor unprotected by sovereign immunity for the purposes of this action.

10. The actions of Amy Acton described herein were either outside the scope of her respective office, or, if within the scope, undertaken in an arbitrary manner, grossly abusing the lawful powers of her office.

11. At all times relevant to the allegations in this Amended Complaint, each and all of the acts of Amy Acton alleged herein were undertaken in conformity with the regulations, customs, usages, policies, and practices of the State of Ohio and the Ohio Department of Health.

12. Defendant has personally undertaken and threatens to continue to personally undertake specific action so as to deprive and/or violate the constitutional rights of the Plaintiffs.

13. All actions by the Defendant described herein were undertaken under color of state law and have caused threaten to continue to cause the deprivation of Plaintiffs' rights protected by the United States Constitution and Ohio Constitution.

14. Amy Acton is being sued herein both in her official capacity and in her individual capacity.

**FACTS**

15. Ohio Rev. Code § 3701.13 delegates to the Director of the Ohio Department of Health, amongst other things, "ultimate authority in matters of quarantine and isolation."

16. On March 22, 2020, Amy Acton purported to impose a Director's Stay at Home Order, ordering that "non-essential businesses and operations must cease," and "effective at 11:59 pm on March 23, 2020, all persons are to stay at home or their place of residence unless they are engaged in Essential Activities, Essential Governmental Functions, or to operate Essential Businesses and Operations as set forth in this Order."

17. Rather than defining the category articulated as "Essential Businesses and Operations," Amy Acton attempted to name "essential businesses and operations" over the course of three pages and 25 paragraphs.

18. While the standard of "essentiality" may initially appear clear, *i.e.*, "necessary for survival," this list includes, amongst other things, liquor, marijuana, dry cleaners, and the state lottery.

19. The Order further purports to require these essential businesses and operations to "take proactive measures to ensure compliance with Social Distancing Requirements," such as attempting to maintain "six-foot distances" from others and providing hand sanitizer and sanitizing products.

20. On April 2, 2020, Amy Acton renewed her Order, with only minor modifications ("Amended Director's Stay at Home Order"). The Amended Director's Stay at Home Order clarifies Amy Acton's intent to rely upon Ohio Rev. Code § 3701.352 to punish any violation of "any order the director of or department of health issues" with violations constituting "a misdemeanor of the second degree, which can include a fine of not more than $750 or not more than 90 days in jail, or both."

21. The Amended Director's Stay at Home Order is attached hereto as Exhibit A

22. The Amended Director's Stay at Home Order further provides for "Dispute Resolution" through a Dispute Resolution Commission.

23. However, the Dispute Resolution Commission is (1) limited to reviewing situations where "any local health department issues a determination under Section 17 of this Order that is in conflict with a determination issued by a different local health department;" (2) appointed

solely by the Director of Health; (3) immune from any right to judicial review, as "the decision of the Dispute Resolution Commission *shall be final*;" and (4) without instruction as to how to allocate the burden of proof.

24. Applying this new power, the Dispute Resolution Commission has clarified that local health departments are limited to answering questions regarding the Order solely if a public official enforcing the Order has questions. *See generally* e-mail exchanges dated between April 9 to 11, 2020, attached hereto as Exhibit B.

25. In doing so the Dispute Resolution Commission, without hearings, has issued a series of copied-and-pasted two-page orders, typically varying from one another by only one sentence.

26. In one such order, the Dispute Resolution Commission determined that "businesses providing car washing services are essential if operating within the following parameters:  1) employees have no direct interactions with customers; 2) employees do not hand-wash or hand-dry vehicles; 3) employees maintain social distancing and comply with the other requirements outlined in the order; and 4) the number of employees is limited to only those necessary to operate the business within these parameters." *See* Advisory Opinion and Recommendation of the Dispute Resolution Commission, attached hereto as Exhibit C.

27. Each Order deems "weddings" to be "essential."

28. Each Order was implemented without enabling legislation or administrative rulemaking.

29. The prospect exists that a second wave of the pandemic may reasonably occur later this year and, with it, Defendant would likely and in all likelihood unilaterally decree the same or

5

similar prohibitions and restrictions as contained in the Amended Director's Stay at Home Order, including decrees that would again shut down Plaintiffs' business with any due process of law.

## JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201, to secure declaratory relief; under 28 U.S.C. § 2202, to secure other relief, including permanent injunctive and damages; and under 42 U.S.C. § 1988, to award attorneys' fees.

31. Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.8, as (i) the Defendant is situated within this judicial district and division; and (ii) all of the claims asserted by Plaintiffs arose within this judicial district and division.

## DECLARATORY JUDGMENT AND INJUNCTION

32. Plaintiffs hereby incorporates by reference the allegations in the foregoing paragraphs as if set forth fully herein.

33. In order to prevent violation of Plaintiffs' constitutional rights by Defendant, it is appropriate and proper that a declaratory judgment be issued, pursuant to FED. R. CIV. P. 57 and 28 U.S.C. § 2201, declaring unconstitutional the Defendant's conduct, policy, practices and custom challenged herein.

34. Furthermore, pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and hereby requested that this Court issue a permanent injunction prohibiting the Defendant from enforcing the restrictions on Plaintiffs' due process rights and other rights to the extent they are unconstitutional, in order to prevent continued and imminent violation of Plaintiffs' constitutional rights.

35. Plaintiffs desire a judicial determination of their rights against Defendants as they pertain to Plaintiffs' right to an immediate hearing upon deprivation of their livelihood their closure of their business.

36. In addition, Plaintiffs are entitled to declaratory and injunctive relief such that they need not face prosecution or fines for failing to obtain a permission to safely operate.

## COUNT I
## VIOLATION OF RIGHT TO DUE PROCESS UNDER FOURTEENTH AMENDMENT
## (42 U.S.C. § 1983)

37. Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

*The Director's Order is Impermissibly Vague*

38. The void-for-vagueness doctrine not only ensures that laws provide "fair warning" of proscribed conduct, but it also protects citizens against the impermissible delegation of basic

7

policy matters "for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

39. Without "clear standards guiding the discretion of public officials" with enforcement authority, there is a risk that those officials will "administer the policy based on impermissible factors."

40. The Director's Order provides no definition of "essentiality."

41. Each of the foregoing standards fails to supply enforcement authorities with sufficient clarity as to how to consistently enforce the Director's regulations without arbitrariness.

42. The absence of a standard fails to permit meaningful judicial review over the Director's orders.

*The State delegates authority without an intelligible principle and the Ohio Department of Health in turn further delegated enforcement of vague standards without an intelligible principle.*

43. The vagueness concerns raised by the State's delegation of "ultimate authority" to the departments of health is aggravated by the Department's absence of standards to determine "essentiality," so as to permit judicial review.

44. "Without sufficient limitations, the delegation of authority can be deemed void for vagueness as allowing *ad hoc* decisions or giving unfettered discretion." *Biener v. Calio*, 361 F.3d 206, 215-17 (3rd Cir. 2004).

45. The State's vague delegation, both on its own and in combination with the vagueness of the standard regulating Plaintiffs' conduct, has violated, continues to violate, and will further violate Plaintiffs' Due Process rights.

8

*Plaintiffs have been denied meaningful hearing as their businesses
has summarily closed by the actions of Amy Acton*

46. The Due Process Clause of the Fourteenth Amendment provides that "no State shall ... deprive any person of life, liberty, or property without due process of law."

47. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a substantive choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide 'due process' before making such a decision.

48. The goal is to minimize the risk of substantive error, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard 'in a meaningful manner.'" *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir. 1996), citing *Loudermill v. Cleveland Bd. of Educ.,* 721 F.2d 550, 563 (6th Cir.1983), *aff'd,* 470 U.S. 532, 105 S.Ct. 1487 (1985).

49. Interests in operating a business or earning a living are more than sufficient to invoke procedural due process guarantees. *Johnson v. Morales*, 946 F.3d 911, 935–37 (6th Cir. 2020) ("Johnson's interest in her business license is enough to invoke due process protection").

50. "There is no dispute that *never* providing an opportunity to challenge a permit revocation violates due process. Thus, the revocation of [the right to remain in business] without a pre-deprivation hearing or a post-deprivation hearing violated due process." *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 488 (6th Cir. 2014).

51. Even when such property interests are deprived in an "emergency situation," government must provide an "adequate post-deprivation process." *United Pet Supply*, 768 F.3d at 486.

52. These safeguards for liberty are so beyond objection that "[n]o reasonable officer could believe that revoking a permit to do business without providing any pre-deprivation or post-deprivation remedy [is] constitutional." *United Pet Supply*, 768 F.3d at 488.

53. Putting an Ohioan out of business without any opportunity for a hearing "is one of the rare situations where the unconstitutionality of the application of a statute to a situation is plainly obvious" such that "a clearly established right" is violated, and even qualified immunity is to be denied. *United Pet Supply*, 768 F.3d at 489.

54. The fundamental requirement of due process is the opportunity to be heard and it is an "opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

55. *Furthermore*, even when "the government has a substantial interest in ensuring the safety of its citizens," a post-deprivation hearing is still required. *See Johnson v. Morales,* 946 F.3d 911, at 923 (6th Cir. 2020).

56. *Finally*, in requiring a post-deprivation hearing, at least with respect to the decimation of one's business and livelihood, it matters not that the deprivation may be only "temporary" in nature. *Fuentes v. Shevin,* 407 U.S. 67, 84–85 (1972)("it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment").

57. "Due process of law requires that plaintiffs be afforded a *prompt* post-seizure, pre-judgment hearing before a neutral judicial or administrative officer." *Krimstock v. Kelly*, 464 F.3d 246, 255 (2d Cir. 2006)(25-day delay for post-deprivation hearing unconstitutional); *see also United States v. James Daniel Good Real Prop.,* 510 U.S. 43, at 56 (1993)("the Due Process Clause requires ... an opportunity for some kind of pre-deprivation or *prompt* post-deprivation hearing at which some showing of the probable validity of the deprivation must be made").

58. Because "burden-shifting can be a problem of constitutional dimension in the civil context," *Johnson v. Morales*, 946 F.3d 911, 916–40 (6th Cir. 2020), the Constitution requires, in this context, that the State carry the burden of proving why any appealing "non-essential business" must remain closed.

59. Thus, judicial precedent dictates that Plaintiffs (and other Ohio businesses shut down as "non-essential") are entitled to a prompt hearing wherein the State must establish that the business is neither essential nor safe. In the absence of such safeguards, the Director's Orders must be immediately enjoined.

60. As director of the Ohio Department of Health and as the person issuing the Stay-at-Home Orders, Amy Acton is required to supply Ohioans who own businesses she unilaterally decrees or deems "non-essential" with a prompt hearing where the burden is on the Department to justify the full closure of those Ohioans' businesses.

61. As director of the Ohio Department of Health and as the person issuing the Stay-at-Home Orders, Amy Acton is required to supply Ohioans who own businesses she unilaterally decrees or deems "non-essential" with hardship relief, such as narrowing the closure order so as to permit limited safe operations.

62. In issuing the Orders, Amy Acton personally ignored and violated clear and important constitutional safeguards afforded to Plaintiffs (and others), even though the Orders had been renewed and carried on for over 50 days.

63. In an unknown and unknowable but not insignificant number of cases, including that of Plaintiffs' case, the Ohio Department of Health would be unable to justify forbidding "non-essential businesses" from reopening on, at minimum, a limited basis.

64. Plaintiffs' business is essential due to the anticipation of the fall wedding season and the timing of its product deliveries.

65. Plaintiffs business is a "special order" business, meaning that customers place their orders for gowns typically no less than 6 months ahead of their wedding date.

66. Given that September and October are of the most popular months for marriage in in Ohio, it is imperative that Plaintiffs' customers are able to shop for their wedding attire immediately so they do not miss the short window of time they have to place their orders and get the dresses in time for their Fall wedding date.

67. Wedding dress designers' "lead times" cannot accommodate a truncated selling season.

68. The wedding industry is, as "essentiality" is contemplated by the Director's Order, "essential": Celebrating love and the traditions surrounding marriage is essential. *See Obergefell v. Hodges,* 576 U.S. 644, ___ (2015)("marriage is one of the vital personal rights essential to the orderly pursuit of happiness by free men," and marriage is "the foundation of the family in our society," as "choices about marriage shape an individual's destiny").

69. Weddings are a factor in returning Ohioans' economy and society to normal life.

70. Permitting Plaintiffs to resume business so that they may plan for these events that are scheduled well in advance will supply young people something to look forward to that feels familiar and happy.

71. Plaintiffs are "essential" to not only to Plaintiffs themselves, but also to their employees.

72. Plaintiff Hartman has underwritten her business with a large home equity line of credit, meaning that the State's forced closure of her business needlessly threatens her home as well as her livelihood.

73. Plaintiffs began a new five-year lease in November 2019, leaving them essential to their landlord, as well, who would lose the investment in the improvements he made specifically for my business functions.

74. Plaintiff Gilded Social operates by appointment only, which, along within insisting on clients' punctuality, which permits Plaintiffs to control the number of individuals within their retail space at any given time.

75. Plaintiffs have always been able to attend to their customers' needs in just one appointment, utilizing virtual assistance when necessary to make those appointments as efficient as possible.

76. Plaintiffs retail store consists of approximately 2,500 square feet, meaning that Plaintiffs can accommodate many clients while still adhering to Social Distancing Requirements (even though Plaintiffs do not anticipate hosting many clients simultaneously).

77. Plaintiffs have always been able to limit access to numerous spaces and items within our store, so that clients are not touching those spaces or items.

Case: 2:20-cv-01952-ALM-KAJ Doc #: 15 Filed: 05/05/20 Page: 14 of 18  PAGEID #: 422

78. Plaintiffs have always been able to maintain an abundance of masks, gloves, soap and water, and hand-sanitizer within the store, steam clean dresses that have been tried-on in between appointments, and sanitize critical spaces, and able to sell our fabric masks to the public.

79. Plaintiffs have always been able to direct dress-fitting and measurements from a safe distance.

80. Plaintiffs have always been able to offer curb-side pick-up service for their clients who are simply picking up their dresses.

81. While the foregoing factors mitigate in favor of a finding that Plaintiffs' business is "essential" or that it is safe for Plaintiffs to operate, neither the Director's Orders nor any other law or rule ever entitled or entitles Plaintiffs or others to any hearing where they can explain these factors to a neutral decisionmaker with the power to lift or amend the closure of their business.

82. In *Speiser v. Randall*, 357 U.S. 513, 525-26 (1958), the Supreme Court invalidated a California procedure under which *taxpayer*s had the burden of demonstrating that they were *not* individuals who advocated the overthrow of the government in order to qualify for tax exemptions. See also *Western & A.R.R. v. Henderson,* 279 U.S. at 642 (1929)("[a] statute creating a presumption that is arbitrary, *or* that operates to deny a fair opportunity to repel it, violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property"); *Minski v. U.S.* 131 F.3d 614, 617 (6th Cir., 1942)("[t]he guaranty of the due process clause of the Fifth Amendment is, that a law shall not be unreasonable, arbitrary or capricious, and we think that the

14

presumptive evidence clauses of the act here involved must fall before the constitutional inhibition").

83. The Ohio Department of Health has provided some opportunity for clarification and adaptation of its Orders to local health departments, while providing none to Ohio's proprietors of "non-essential businesses."

84. The Ohio Supreme Court has expressed that due process requires all inferences to be drawn in favor of *Ohio property owners rather than against them.*

85. Any hearing that would place the burden on the closed proprietor to prove compliance with vague standards such as "essentiality" would violate due process.

86. Plaintiffs face irreparable harm in the form of permanent closure and failure of their business and/or criminal penalties.

87. Ohio Governor and former Ohio Attorney General Mike DeWine maintains a history of using his public office to file lawsuits against bridal shops that are unable to fulfill clients' orders, whether pursuant to bankruptcy or otherwise. See *https://www.dispatch.com/news/20181129/dewine-sues-dublin-bridal-shop-elegant-bride-over-unfilled-orders.*

88. As a direct and proximate result of the personal actions and conduct of Amy Action, Plaintiffs have suffered and continue to suffer actual and/or nominal damages due to her failure to provide a hearing consistent with the Due Process Clause of the Fourteenth Amendment, resulting in, amongst other things, the deprivation of all or nearly all gross business revenues and personal financial harm during all or part of the period in which the Orders unilaterally decreed by Amy Acton have precluded Plaintiffs from operating their business.

15

89. Defendant has not ruled out reinstituting the non-essential business ban or otherwise closing Plaintiffs' business in the future.

90. Defendant has aggressively defended her policies of closing businesses in Ohio, including Plaintiffs' business, without a post-deprivation hearing.

91. There is no reason to believe that Defendant may not return to such policies if not permanently enjoined from doing so, particularly given that lack of checks and balances associated with such unilateral orders.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant Amy Acton, and that this Court:

(1) declare that Department of Health's April 2, 2020 Amended Director's Stay at Home Order's mandate that "non-essential businesses must cease" is unconstitutional on its face due to its failure to supply meaningful Procedural Due Process.

(2) declare that Department of Health's April 2, 2020 Amended Director's Stay at Home Order's mandate that "non-essential businesses must cease" is unconstitutional as applied to Plaintiffs.

(3) issue a permanent injunction prohibiting Defendant and Defendant's agents from enforcing the mandate that "non-essential businesses must cease," whether against Plaintiffs, against a class of similarly situated business owners who are not otherwise subject to Ohio Department of Health regulation and licensing, or against all Ohioans.

(4) issue a permanent injunction prohibiting Defendant from enforcing or relying on the mandate that "non-essential businesses must cease" so as to prosecute, fine, imprison, or otherwise punish Plaintiffs and others.

(5) award Plaintiffs actual damages or nominal damages due to the deprivation of due process and the violation of the Due Process Clause of the Fourteenth Amendment by the personal conduct and actions of Amy Acton;

(6) award Plaintiffs their costs and expenses incurred in bringing this action, including their reasonable attorneys' fees; *and*

(7) grant such other and further relief as the Court deems equitable, just, and proper.

                                    Respectfully submitted,

                                     */s/ Curt C. Hartman*
                                    CURT C. HARTMAN  (0064242)
                                    THE LAW FIRM OF CURT C. HARTMAN
                                    7394 Ridgepoint Drive, Suite 8
                                    Cincinnati, Ohio 45230
                                    (513) 379-2923
                                    *HartmanLawFirm@fuse.net*

                                    Maurice A. Thompson (0078548)
                                    1851 Center for Constitutional Law
                                    122 E. Main Street
                                    Columbus, Ohio 43215
                                     (614) 340-9817
                                    *MThompson@OhioConstitution.org*

                                    Christopher Finney (0038998)
                                    Finney Law Firm, LLC
                                    4270 Ivy Pointe Boulevard, Suite 225
                                    Cincinnati, Ohio  45245
                                    (513) 943-6660 phone
                                    (513) 943-6669 fax
                                    *Chris @FinneyLawFirm.com*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing will be served via the Court's ECF system upon all counsel of record on the date of filing.

                                                */s/ Curt C. Hartman*