IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **TANYA RUTNER HARTMAN,** and **GILDED SOCIAL,** | : :  : |
| Plaintiffs, | : Case No. 2:20-CV-1952 : |
| v. | : Chief Judge Algenon L. Marbley : |
| **AMY ACTON,** *In her official capacity as Director of the Ohio Department of Health*, | : : : Magistrate Judge Jolson |
| Defendant. | : : |

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss. (ECF No. 18). Plaintiffs have filed a response, opposing the motion to dismiss (ECF No. 20) and Defendant has filed a reply (ECF No. 22). For the reasons set forth below, this Court **GRANTS** Defendant's Motion to Dismiss.

### I. BACKGROUND

This Court incorporates by reference the statement of facts set forth in its April 21, 2020 Order denying Plaintiffs' Motion for a Temporary Restraining Order ("TRO"). (ECF No. 7). Since that Order, Director Acton's April 2, 2020 Stay at Home Order ("Stay at Home Order") at issue in the TRO proceedings has expired and Ms. Hartman has been permitted to resume her normal business operations. Nonetheless, Ms. Hartman, as owner and operator of bridal shop Gilded Social, has filed an amended complaint continuing to challenge the provisions of the April 2, 2020 Stay at Home Order and Director Acton's authority to promulgate such an order. (ECF No. 15). Ms. Hartman brings claims against Director Acton in her official and individual capacity for declaratory and injunctive relief and damages. (ECF No. 15). Defendant, Dr. Acton, has brought

a Motion to Dismiss this amended complaint arguing that this Court lacks subject matter jurisdiction over Plaintiffs' claims and that the complaint fails to state a viable claim for relief. (ECF No. 18). Plaintiffs have responded opposing this motion and Defendant has timely filed a reply. (ECF No. 20; No. 22). On June 11, 2020, Dr. Acton resigned as the Director of the Ohio Department of Public Health ("the Director").

## II.     STANDARD OF REVIEW

### A.     12(b)(1)

When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). Federal Rule of Civil Procedure 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties: (1) a facial attack on subject matter jurisdiction; and (2) a factual attack on subject matter jurisdiction. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (identifying the two types of 12(b)(1) motions to dismiss). Facial attacks on subject matter jurisdiction "merely question the sufficiency of the pleading." *Id.* A facial attack on subject matter jurisdiction is reviewed under the same standard as a 12(b)(6) motion to dismiss. *Id.* In a factual attack on subject matter jurisdiction, a court "must ... weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.* Here, Defendant challenges the sufficiency of the pleadings and does not contest the facts.

### B.  12(b)(6)

This Court may dismiss a cause of action under 12(b)(6) for "failure to state a claim upon which relief can be granted." A 12(b)(6) motion "is a test of the plaintiff's cause of action as stated

in the complaint, not a challenge to the plaintiff's factual allegations." *Golden City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). The Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). This Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### III. ANALYSIS

In her motion to dismiss, Defendant argues that this Court lacks jurisdiction over Plaintiffs' claims and the complaint fails to state a viable claim for relief. Specifically, Defendant makes the following arguments: (1) the Eleventh Amendment to the Constitution bars state law claims and claims for non-prospective declaratory and monetary relief against Dr. Acton in her official capacity; (2) Plaintiffs have no standing to bring claims on behalf of other businesses; (3) that Plaintiffs' claims are moot and not ripe to the extent they relate to potential future orders that could be issued; (4) and that the amended complaint fails to state a valid claim for vagueness, impermissible delegation, violation of procedural due process, or violation of equal protection. (ECF No. 18).

Plaintiffs have filed a response clarifying that they are **not:** (1) seeking damages against Dr. Acton in her official capacity, nor requesting declaratory relief on the basis of her past conduct, nor challenging her conduct on the basis of state law; (2) Plaintiffs are not bringing their claims on behalf of a class; and (3) bringing claims for impermissible delegation pursuant to the U.S. Constitution, noting "the delegation authority to [sic] AMY ACTION under state law does not directly give rise to a claim under the federal constitution, see Motion to Dismiss, at 16-18." (ECF No. 20 at 1). Accordingly, to the extent these claims are raised in Plaintiffs' amended complaint, they are hereby **DISMISSED**.

In their response, Plaintiffs oppose the remainder of Defendant's motion to dismiss, arguing: (A) that although Dr. Acton's Stay at Home Order has expired, this matter is not moot since she has voluntary ceased the allegedly illegal conduct and the capable of repetition and evading review exception to mootness applies; (B) their complaint states a valid claim that the Director's order was unconstitutionally vague; (C) their complaint states a valid claim that the Director's order violated their rights to procedural due process; and (D) Dr. Acton is not entitled to qualified immunity for the claims brought against her in her individual capacity. This Court will address each of these arguments in turn.

### A. 12(b)(1) Lack of Subject Matter Jurisdiction - Mootness / Ripeness

On June 11, 2020, Dr. Acton resigned as the Director of the Ohio Department of Public Health. Although Dr. Acton is no longer serving as the Director of the Ohio Department of Public Health, the claims brought against her in her official capacity are not moot. Although it is true that state officials "literally are persons," suits against state officials in their official capacity are "no different from a suit against the State itself" since they are "a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Additionally, claims

4

made against a public official in their official capacity do not terminate when the official leaves office; instead, the "officer's successor is automatically substituted as a party." *See* Fed. R. Civ. P. 25(d). Accordingly, the claims against Dr. Acton in her official capacity are construed for the purposes of this order as claims against the office of the Director of the Ohio Department of Public Health, currently occupied by Lance Himes. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation.").

Defendant argues that Plaintiffs' amended complaint should be dismissed as moot because it relates to a Stay at Home order that is no longer in effect. (ECF No. 18 at 12). Defendant also argues that to the extent that Plaintiffs' complaint addresses the potential impact of any future orders to be issued by Dr. Acton, those claims should be dismissed for lack of ripeness. *Id*. at 34. Plaintiffs argue that their claims are not moot since the alleged conduct was voluntarily ceased and the Director's order could be reinstated at any time. Plaintiffs add that even if considered moot, the capable of repetition yet evading review exception to mootness applies. (ECF No. 20 at 2).

Article III, § 2 of the United States Constitution vests federal courts with jurisdiction to address "actual cases and controversies." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (citing U.S. CONST. art III, § 2). Federal courts are prohibited from rendering decisions that "do not affect the rights of the litigants." *Id.* (citing *Southwest Williamson County Cmty. Assoc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001)). This is broadly known as justiciability doctrine and encompasses the concepts of mootness and ripeness. A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *See Cleveland Branch, N.A.A.C.P. v.*

*City of Parma, OH,* 263 F.3d 513, 530 (6th Cir. 2001) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). In essence, the mootness doctrine posits that cases, which, due to changed circumstances, can no longer impact the interests of the litigants, may not be adjudicated in the federal courts. *See DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (finding moot plaintiff's case challenging the constitutionality of a state law school's admissions process where plaintiff was nearing completion of his final year in law school when the case reached the United States Supreme Court for review and he would not go through law school admission process again). Finally, the "heavy burden" of demonstrating mootness falls on the party asserting it. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). !

There are, however, two exceptions to the mootness doctrine. First, a case will not be dismissed where a plaintiff's claim has been mooted by a defendant's voluntary cessation of allegedly improper behavior. *Id.* at 189. Second, a case will not be dismissed even when a plaintiff's claim has become moot if the circumstances are such that the injury is capable of repetition, yet evading review. *Weinstein v. Bradford,* 423 U.S. 147, 148–49, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

Defendant argues that Plaintiffs' claims regarding the now expired Stay at Home Order should be dismissed as moot since Plaintiffs can only obtain prospective declaratory and injunctive relief against state officials, pursuant to the Eleventh Amendment. A case is only considered moot by the defendant's voluntary cessation of the conduct at issue, however, if the defendant can show that "there is no reasonable expectation that the wrong will be repeated " or "interim relief or events have completely and irrevocably eradicated the effects of the alleged

6

violation." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 1383, 59 L. Ed. 2d 642 (1979) (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). *See also Friends of the Earth,* 528 U.S. at 170 ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."). Even voluntary cessation in the form of repealing a statute may not be sufficient to moot a case. *See, e.g. City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (holding that a city's repeal of part of an ordinance did not moot the case because "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated"). Here, Defendant does not argue that such restrictions on businesses will not be imposed in the near future, only that "it is speculative to assume that Dr. Acton would revert to the same restrictions on non-essential businesses" and that future orders might include different types of restrictions. (ECF No. 43 at 35). This is insufficient to demonstrate that the alleged wrongful conduct will not be repeated and that the Director will not reinstate the same Stay at Order should there be a resurgence of new cases in the Fall.

Furthermore, even if the expiry of the order rendered Plaintiffs' claims moot, the issues in this case fall into the other exception to the mootness doctrine:  that the conduct at issue here is capable of repetition yet evading review. The Supreme Court recognizes an exception to mootness in cases that are "capable of repetition, yet evading review." *See Murphy v. Hunt,* 455 U.S. 478, 102 S. Ct. 1181, 71 L.Ed.2d 353 (1982). The Court has explained that, "in the absence of a class action, the 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combined: (1) the challenged action was in its duration too short to

7

be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). The Director's Stay at Home Order was designed as a short measure intended to "avoid an imminent threat" and stem the spread of a new and virulent disease. (ECF No. 15-1 at 13).

The first prong of the "capable of repetition, yet evading review" doctrine is satisfied since each version of the Director's Stay at Home Order contained an expiration date that was less than two months after the issuance of that order and the Supreme Court and other courts recognize challenged conduct as evading reviewing when the relevant duration is less than two years. *See Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976, 195 L. Ed. 2d 334 (2016) (applying capable of repetition yet evading review mootness exception and noting "[w]e have previously held that a period of two years is too short to complete judicial review of the lawfulness of the procurement."); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (nine months for pregnancy); *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 596 (6th Cir. 2014) (approximately 6-month period between solicitation of bids for Army contract and new vendor's contract); *People for the Ethical Treatment of Animals, Inc. v. United States Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 97 (D.D.C. 2014) (noting that orders of "less than two years' duration ordinarily evade review."); *Granato v. Bane,* 74 F.3d 406, 411 (2d Cir.1996) (hospitalization lasting less than a month); *Colautti v. Doe,* 592 F.2d 704, 707 (3d Cir.1979) (sixty-day limit on inpatient hospital benefits).

The second prong is also satisfied here since the Supreme Court and Sixth Circuit have emphasized that the proper focus is whether "'the controversy was *capable* of repetition and not ... whether the claimant had demonstrated that a recurrence of the dispute was more probable

than not.'" *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005) (citing *Honig v. Doe,* 484 U.S. 305, 319 n. 6, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (emphasis in original)). Defendant repeatedly defends the Stay at Home Orders arguing that it is within the Director's legal purview to impose such restrictions. Furthermore, in light of the realistic prospect of a resurgence of the virus in the fall, it is reasonable to expect that the Director may impose the same or a similar order in the future. Accordingly, such an action is "capable of repetition" and Plaintiffs' claims are not moot.

In finding that Plaintiffs' claims are not moot, however, this Court will not entertain speculative or hypothetical future provisions that could be imposed by the Director in the future and will constrain its review to the constitutionality of the April 2, 2020 Stay at Home Order. Defendant argues that Plaintiffs' complaint should be dismissed to the extent that Plaintiffs "seek relief regarding orders that could possibly be issued by Dr. Acton in the future" since those claims would not be ripe. (ECF No. 18 at 34).

Just as with mootness, ripeness doctrine is also drawn from Article III of the Constitution and is a threshold jurisdictional inquiry. *See Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). Ripeness doctrine prevents "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ... and also [exists] to protect ... from judicial interference until a[ ] ... decision has been formalized and its effects felt in a concrete way by the challenging parties." *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). A claim is not ripe if "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (internal quotation marks omitted). Accordingly,

"ripeness is 'a question of timing.'" *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 533 (6th Cir. 2001) (finding that Plaintiff's claims were ripe since "[t]his case is not anchored in future events that have not occurred, but in events that have already occurred").

As Defendant indicates, any challenge to a future hypothetical order issued by the Director would not be ripe since the specifics of future orders and the impact of those orders on Plaintiffs are not before this court. Plaintiffs, however, have clarified that they are not seeking a declaratory judgment that any future hypothetical orders should be held unconstitutional, focusing their claims instead on the constitutionality of the Director's expired April 2020 order. Defendant concedes this fact, noting that the "Amended Complaint seeks relief with respect to the Amended Order, which is no longer in effect." (ECF No. 18). Accordingly, since Plaintiff does not seek to enjoin the enforcement of a hypothetical future order and Defendant does not challenge the ripeness of Plaintiffs' claims as they are presented in relation to the April 20 Stay at Home Order, this Court need not conduct a formal ripeness analysis.[1]

---

[1] Plaintiffs remaining causes of action are (1) a request to permanently enjoin the Director from reapplying or enforcing certain provisions in the April 2020 order; (2) a request for damages against Dr. Acton in her individual capacity; and (3) a request for costs and reasonable attorneys' fees. Sixth Circuit caselaw requires courts to analyze ripeness by examining three factors: "(1) that [plaintiff] has suffered an "injury in fact," (2) that there is a "causal connection between the injury and the conduct complained of," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014). Courts also consider two other prudential factors when determining ripeness: the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration. *Id.* at fn 2. Defendant does not dispute that Plaintiff can demonstrate all factors in relation to the April 2020 order since Plaintiffs alleged that they suffered an economic injury as a result of the Amended Stay at Home Order and would suffer the same injury again if that order were reissued, and Defendant has not represented that it will decline to enforce the order against businesses who do not comply with its provisions to cease all in person business should the order be re-issued. *Id.* at 609. Furthermore, the remaining prudential ripeness factors, fitness and hardship are satisfied here since the issues are "purely legal, and will not be clarified by further factual development" and a denial of review would subject Plaintiffs to hardship since the failure to comply with the Stay at Home Orders would subject them to criminal prosecution or fines. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149,

10

### B. 12(b)(6) Failure to State a Claim

#### 1. Vagueness

Defendant argues that Plaintiffs have not stated a valid void for vagueness claim since the terms of the Director's Stay at Home Order are clear, Plaintiffs understood they were not categorized as an Essential Business Operation (as that term is defined in the Order), and Plaintiffs "simply disagree with the conclusion that their business was not essential." (ECF No. 18 at 23). Plaintiffs counter that their vagueness challenge is not only premised on fair notice to the individuals affected by the Stay at Home Order, but is also based on the notion that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." (ECF No. 20 at 5). Plaintiffs essentially launch a facial challenge against ORC § 3701.13 and the Director's Order arguing both are unconstitutionally vague because they "lack any objective standards to prevent arbitrary and ad hoc enforcement and decrees." *Id*. at 5-6. They add that an Ohio state court judge has recognized this statute's constitutional infirmity in a recently decided case. *Id*.

The void for vagueness doctrine comes from the Due Process Clause and prohibits civil and criminal laws that fail "to give ordinary people fair notice of the conduct [they] punishes, or [are] so standardless that [they] invite[] arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). The nature of the statute dictates the standard to be applied, with civil laws "held to a less strict vagueness standard than criminal laws 'because the consequences of

---

167, 134 S. Ct. 2334, 2347, 189 L. Ed. 2d 246 (2014) (finding prudential factors easily satisfied but noting tension between consideration of these factors and Supreme Court's "recent reaffirmation of the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'").

imprecision are qualitatively less severe.'" *Buckle Up Festival, LLC v. City of Cincinnati*, 336 F. Supp. 3d 882, 886 (S.D. Ohio 2018) (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S. Ct. 1186, 1193, 71 L. Ed. 2d 362 (1982)). Where a contested statute does not implicate the First Amendment, a court is required to examine the vagueness challenge "in the light of the facts of the case at hand" and Plaintiff "bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation." *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (citing *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975)); see also *Wayne Watson Enterprises, LLC v. City of Cambridge*, 243 F. Supp. 3d 908, 926 (S.D. Ohio 2017), *aff'd,* 751 F. App'x 760 (6th Cir. 2018). To survive a vagueness challenge, the contested statute or regulation must: (1) "give the person of ordinary intelligence a reasonable opportunity know what is prohibited"; (2) "provide explicit standards for those who enforce them" to prevent "arbitrary and discriminatory enforcement"; and (3) not impinge upon first amendment rights." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

As to the vagueness challenge to the Director's Amended Stay at Home Order, this Court has already determined that the language of the Stay at Home Order is clear and that officials enforcing this Order have clear standards by which to enforce that Order. (ECF No. 7 at 10-12). As this Court determined previously, Plaintiffs do not argue that this Order was enforced against them, let alone discriminatorily enforced against them but not a similar business classified as "non-essential," and their submissions to this Court indicate that they understood that the Order applied to their business. Accordingly, the Director's Amended Stay at Home Order is neither

12

vague because it fails to give notice nor vague because it is so "standard less that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. at 2556.

Plaintiffs' vagueness challenge also fails with respect to the Ohio statute authorizing The Director to issue the Stay at Home Order, Oh. Rev. C. § 3701.13.[2] By its terms, Oh. Rev. C. § 3701.13 delegates ultimate authority in matters of quarantine to the Department of Health for the protection of human life. This specific statute does not criminalize any conduct[3] and does not prohibit or compel Plaintiffs to act in a certain way, it merely provides the Health Department with authority over the preservation of life and matters of quarantine. Accordingly, Plaintiffs lack standing to challenge this statute on its face. *See Wayne Watson Enterprises, LLC v. City of Cambridge*, 751 F. App'x 760, 766 (6th Cir. 2018) (noting that plaintiff lacked standing to challenge as vague an ordinance that authorized construction of access road because the ordinance did not regulate or criminalize Plaintiff's conduct in any way).

---

[2] Oh. Rev. C. § 3701.13 provides, in relevant part: "The department of health shall have supervision of all matters relating to the preservation of the life and health of the people and have ultimate authority in matters of quarantine and isolation, which it may declare and enforce, when neither exists, and modify, relax, or abolish, when either has been established. The department may approve methods of immunization against the diseases specified in section 3313.671 of the Revised Code for the purpose of carrying out the provisions of that section and take such actions as are necessary to encourage vaccination against those diseases."

[3] Two provisions, which Plaintiffs do not challenge as unconstitutionally vague, do criminalize violations of the Department of Health or Director of Health's orders. Section 3701.352 provides: "[n]o person shall violate any rule the director of health or department of health adopts or any order the director or department of health issues under this chapter to prevent a threat to the public caused by a pandemic, epidemic, or bioterrorism event." Section 3701.56 provides: "[b]oards of health of a general or city health district, health authorities and officials, officers of state institutions, police officers, sheriffs, constables, and other officers and employees of the state or any county, city, or township, shall enforce quarantine and isolation orders, and the rules the department of health adopts."

Even if Plaintiffs had standing to challenge this statute, the fact that this statute provides the Director of Health with discretion to promulgate regulations to protect human life does not render the statute void for vagueness. While the Due Process Clause does prohibit the "standardless delegation of power" to private persons, here, power is delegated to an executive branch official, not a private person. *See Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 3d 639, 675 (S.D. Ohio 2016) (citing *Eubank v. Richmond*, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912) and *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928)). The Supreme Court has held as unconstitutional laws that "impermissibly delegate[] basic policy matters to policemen, judges, [4] and juries for resolution on an ad hoc and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S. Ct. 2294, 2299, 33 L. Ed. 2d 222 (1972). The Sixth Circuit and other courts have recognized, however, that this principle of nondelegation inherent in the void for vagueness doctrine does not extend to delegations of discretion to legislative and executive-type officials. *See Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 552 (6th Cir. 2007) (granting motion to dismiss finding no violation of vagueness doctrine where ordinance was not criminal statute and delegated authority to City Council to grant exemptions from statute requiring firefighters to live in the city); *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1184 (9th Cir. 1988) (delegation of authority to local council to determine when election should be held did not violate vagueness doctrine since "void for vagueness doctrine does not apply to

---

[4] The Supreme Court has reigned in this theory in *Beckles v. United States*, 137 S. Ct. 886 (2017). In *Beckles*, the Supreme Court determined that the advisory sentencing guidelines were not void for vagueness. *Id*. at 895. In so holding, the Supreme Court noted that it has "never suggested that unfettered discretion can be void for vagueness" since prior to the guidelines, judges were permitted to exercise almost complete discretion in determining a Defendant's sentence.

this fundamental delegation of authority to the legislative body"); *Brockert v. Skornicka*, 711 F.2d 1376, 1382 (7th Cir. 1983) (granting defendants' motion for summary judgement finding no violation of Due Process vagueness doctrine where ordinance was not criminal statute and delegated authority to city mayor, the "city's executive department," and thereby placed discretion "where it has been customarily and appropriately exercised" in deciding to grant exemptions for rule requiring city employees to live in the city). Here, the delegation of authority to the Department of Health in Oh. Rev. C. § 3701.13 does not violate the vagueness doctrine's prohibition on the delegation of authority to "policemen, judges, and juries" since the statute delegates policy-making power to an executive branch, here the Department of Health, where that authority is customarily placed.[5] Accordingly, Plaintiffs have failed to state a valid void for vagueness claim against Defendant Acton.

## 2. Procedural Due Process

Defendant also moves to dismiss Plaintiffs' procedural due process claims, arguing that the Director's Order does not require a post-deprivation hearing since it is a law of general applicability. (ECF No. 18 at 26-27). Plaintiffs argue that the Director's Stay at Home Order is not a law of general applicability since The Director is a state executive branch official and thus does not possess the power to legislate. (ECF No. 20 at 14).

To state a claim for a violation of procedural due process, a Plaintiff must allege: "(1) that it had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that it was deprived of that protected interest within the meaning of

---

[5] Nearly every state has similar laws delegating authority with respect to public health and matters of quarantine to a Department of Health or comparable agency or executive official such as a governor. *See* State Quarantine and Isolation Statutes, National Conference of State Legislatures (Feb. 27, 2020), https://www.ncsl.org/research/health/state-quarantine-and-isolation-statutes.aspx.

the Due Process Clause; and (3) that the state did not afford it adequate procedural rights before depriving it of its protected interest." *Golf Vill. N. LLC v. City of Powell, Ohio*, 333 F. Supp. 3d 769, 778 (S.D. Ohio 2018) (citing *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)). Since the majority of the issues disputed by the parties remain the same, this Court adopts and incorporates by reference its analysis of Plaintiff's procedural due process claim made in its Order addressing Plaintiffs' Motion for a Temporary Restraining Order (ECF No. 7 at 12-20). In that Order, this Court determined that while Plaintiffs do have a property interest in the continued operation of their business, but their procedural due process rights were not violated nor implicated by the Director's Stay at Home Order since it was an order of general applicability and "the rights of an individual affected by a law of general applicability 'are protected in the only way that they can be in a complex society, by [the affected individual's] power, immediate or remote, over those who make the rule.'" (ECF No. 7 at 15) (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) and *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982))

Plaintiffs' sole deviation from their position taken during the TRO proceeding relates to whether the Director's Stay at Home Order can be properly categorized as a legislative act which requires no procedural due process guarantees. Plaintiffs argue that principles of comity and federalism require this Court to view the Director's Order as administrative, since Ohio law considers the Director to be a direct and immediate subordinate of the Governor, and as such, is "indisputably an executive branch officer for which state principles of separation of powers precludes her actions from being legislative." (ECF No. 20 at 11).

The determination of whether an act is adjudicative or legislative is made pursuant to federal law since Plaintiffs claim that the Director's actions violated their due process rights

under the United States Constitution. *See Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 216 (6th Cir. 2011) (applying federal law when assessing whether activities of Board of School Commissioners were legislative or adjudicatory); *Convey It, Inc. v. Chatfield*, No. 3:10-CV-457, 2012 WL 4088873, at *3 (S.D. Ohio Sept. 17, 2012) (noting that because the source of the right at issue was the United States Constitution, federal law governs the issue of whether the regulation was legislative or administrative act). As this Court has already determined, both the Sixth Circuit and the Supreme Court reject formalistic distinctions when determining whether an act is legislative or adjudicative and categorize as legislative those rules and regulations adopted by administrative agencies that are intended to apply to large groups equally and which do not target the rights of one individual. (ECF No. 7 at 16); *see also United States v. Florida East Coast Ry.*, 410 U.S. 224 (1973) (determining that no due process right to hearing was triggered by agency action where it was applicable "across the board all common carriers" and "no effort was made to single out any particular railroad for special consideration based on its own peculiar circumstances."); *Neinast v. Bd. of Trustees of Columbus Metro. Library*, 346 F.3d 585, 596–97 (6th Cir. 2003) ("Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard.").

Plaintiffs argue that the Director can never act in a "legislative function" but Plaintiffs do not even cite any state law that supports that administrative agencies can never act in a legislative capacity when rulemaking. (ECF No. 20 at 14). This Court also could not locate any authority supporting this argument. In fact, Ohio law supports the proposition that administrative officers and agencies can act in quasi-legislative manner when they make rules and that the delegation of such rule-making power is not per se unconstitutional pursuant to the Ohio constitution.[6] *See*

---

[6] To the extent Plaintiffs seek to indirectly renew their non-delegation claims within this argument by arguing that characterizing the Director's Order as legislative would contravene state non-delegation law, this Court reiterates its

17

*DeMoise v. Dowell*, 10 Ohio St. 3d 92, 93–94, 461 N.E.2d 1286, 1288 (Oh. 1984) (noting it is "well established that the state can directly exercise its police power concerning public health or it may delegate that power to other governmental agencies"); *State v. Schreckengost*, 30 Ohio St. 2d 30, 32–33, 282 N.E.2d 50, 52 (Oh. 1972) (determining that legislation authorizing the Division of Parks and Recreation to makes rules and regulations necessary to proper management of parks and bodies of water was not unconstitutional delegation of legislative authority); *Fortner v. Thomas*, 22 Ohio St. 2d 13, 13, 257 N.E.2d 371, 372 (Oh. 1970) (noting that Ohio courts are not permitted to conduct "judicial review of quasi-legislative proceedings of administrative officers and agencies" and are limited to deciding "whether such rules are reasonable and lawful as applied to the facts of a particular justiciable case."); *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329, 342, 55 N.E.2d 629, 635 (Oh. 1944) (noting that "legislative acts granting to a board or an administrative agency quasi-legislative or quasi-judicial power, have been uniformly sustained where the General Assembly has laid down the policy and established the standards while leaving to an administrative agency the making of subordinate rules within prescribed limits and the determination of facts to which the legislative policy is to apply.").

Accordingly, Plaintiffs have failed to state claim for violation of their procedural due process rights, since the Director's Stay at Home Order was a general applicable regulation and no post-deprivation hearing was required.

### 3. Qualified Immunity

Lastly, Defendant argues she is entitled to qualified immunity because it is not clearly established that the statute she relied on as the authority for her Stay at Home Order was

---

prior determination that this Court lacks jurisdiction to determine claims relating to state law against the Director. (ECF No. 7 at 6-7) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984)).

unconstitutionally vague and because there was no underlying violation of Plaintiffs' rights. (ECF No. 45). Plaintiffs oppose the request for qualified immunity, arguing that the requirement for a post deprivation hearing is "sufficiently clear to a reasonable official when a decree or conduct related thereto deprive or infringes a liberty or property right." (ECF No. 20 at 18).

To assess whether an official should be cloaked with immunity from suit, a Court is required to engage in two-tiered inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). First, a court must determine whether, viewing the facts in the light most favorable to a plaintiff, she has alleged that the defendant-official's conduct violated a constitutionally protected right. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009). Second, the court must determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right. *Id*. The Court can consider the prongs in any order, and the officer is entitled to qualified immunity if either is not met. *Id.; see also Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018) (internal citations omitted).

Here, Plaintiffs have failed plausibly to allege the violation of a constitutional right. Accordingly, this Court need not determine whether the alleged right was clearly established, and Defendant is entitled to qualified immunity.

## IV.   CONCLUSION

For these reasons stated above, this Court **GRANTS** Defendant's Motion to Dismiss. This case is dismissed with prejudice.

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
**DATED:  November 3, 2020**                    CHIEF UNITED STATES DISTRICT JUDGE